**COMMONWEALTH of Pennsylvania**

v.

**Joseph PARENTE, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2008.

Decided Sept. 9, 2008.

Lawrence G. Paladin, Jr., Pittsburgh, for appellant.

Timothy J. Lyon, Asst, Dist. Atty., Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, SMITH–RIBNER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Joseph Parente appeals the judgment of sentence entered in the Court of Common Pleas of Allegheny County (trial court) which sentenced Parente to pay a fine totaling $250.00 based upon the adjudication of guilt for Parente's violation of Section 601.04(e)(2) of the City of Pittsburgh's (City) Code of Ordinances (Ordinance).[1] We affirm.

---

1. Section 601.04 of the Ordinance provides, in pertinent part:

§ 601.04 NOISE CONTROL

(a) *Purpose:* Excessive noise is a serious threat to the welfare, contentment, safety, health and the peace and quiet of the residents of the City. It is the intent of this Ordinance to establish requirements to prevent excessive noise that may jeopardize the health and welfare of its residents or degrade their quality of life. This Ordinance is not intended and shall not be interpreted to be a regulation of the content of speech or communication; this Ordinance is in-

On February 24, 2007, Officer Bryan Sellers of the City's Police Department was at the corner of 7th Avenue and Wood Street in the City when he heard amplified noise coming from a set of speakers in front of 933 Liberty Avenue. An abortion clinic is located at that address, and it is more than 200 feet from where Officer Sellers was standing. Officer Sellers went to that address and found Parente using a sound system composed of two loudspeakers, an amplifier and a microphone.[2] While Officer Sellers began to prepare a citation based on Parente's use of the sound system without a permit, Parente started talking to a patient approaching the clinic into the hand held microphone connected to the loudspeakers. Officer Sellers ordered Parente to cease using the system three times, and Parente refused to comply with the officer's command. As

a result, Officer Sellers arrested Parente and charged him with one count each of a misdemeanor charge of Disorderly Conduct under Section 5503(a) of the Crimes Code, 18 Pa.C.S. § 5503(a), and a summary violation of Section 601.04(e)(2) of the City's Ordinance. On February 27, 2007, Parente was adjudged guilty of a summary charge of Disorderly Conduct[3] and the summary violation of Section 601.04(e)(2) of the City's Ordinance following a hearing before a district justice.

On March 26, 2007, Parente appealed the convictions to the trial court, which conducted a *de novo* hearing on July 30, 2007. *See* N.T. 7/30/07[4] at 2–29. At the hearing, Parente argued, *inter alia*, that: (1) the enforcement of the Ordinance violated his right to freedom of speech[5] and the free exercise of religion[6] as guaranteed by the First Amendment to the United

---

tended to be entirely content-neutral; this Ordinance regulates only the time, place and manner of noise as defined below.

\* \* \*

(e) *Amplified noise from vehicles or handheld devices.*

 (1) No person shall transmit noise from a vehicle ... which is plainly audible to an officer at a distance of seventy-five (75) feet from the source of the noise.

 (2) This provision also includes portable, hand carried, audio amplification or reproduction devices. . . .

\* \* \*

(i) *Penalties.*

 (1) Any person violating any provision of this section, unless otherwise specified in this section, shall be fined not more than three hundred dollars ($300.00) and costs for each offense, and in default of payment thereof may be imprisoned for not more than thirty (30) days. . . .

2. Officer Sellers had encountered Parente at that address a week earlier and warned Parente that he was not permitted to use a loudspeaker without a permit.

3. Section 5503(b) of the Crimes Code provides:

 **(b) Grading.**—An offense under this section is a misdemeanor of the third degree if

the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

18 Pa.C.S. § 5503(b).

4. "N.T. 11/30/06" refers to the transcript of the *de novo* hearing conducted before the trial court on November 30, 2006.

5. The First Amendment to the United States Constitution provides, in pertinent part, that "[C]ongress shall make no law ... abridging the freedom of speech. . . ." U.S. CONST. amend. I. The Free Speech Clause of the First Amendment is applicable to the States through the Fourteenth Amendment. *In re Condemnation by Urban Redevelopment Authority of Pittsburgh*, 590 Pa. 431, 913 A.2d 178 (2006).

6. The First Amendment to the United States Constitution provides, in pertinent part, that "[C]ongress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. CONST. amend. I. The Free Exercise Clause of the First Amendment is applicable to the States through the Fourteenth Amendment. *Ridley*

States Constitution; (2) the Ordinance substantially burdens the free exercise of his religion in violation of the Pennsylvania Religious Freedom Protection Act (RFPA)[7]; and (3) the Commonwealth failed to establish that he violated the relevant provisions of the Ordinance. *See Id.* at 15–17, 23–26.

Following the hearing, the trial court issued the instant judgment of sentence,

adjudicating Parente not guilty of the Disorderly Conduct charge, adjudicating him guilty of the violation of Section 601.04(e)(2) of the City's Ordinance, and imposing a $250.00 fine and court costs for the violation of the Ordinance. Parente then filed the instant appeal.[8]

In this appeal, Parente claims[9]: (1) his conviction for violating Section 601.04(e)(2) of the Ordinance is not supported by suffi-

---

*Park United Methodist Church v. Zoning Hearing Board of Ridley Park Borough*, 920 A.2d 953 (Pa.Cmwlth.2007).

7. Act of December 9, 2002, P.L. 1701, 71 P.S. §§ 2401–2407. More specifically, Section 4 of the RFPA provides:

(a) **General rule.**—Except as provided in subsection (b), an agency shall not substantially burden a person's free exercise of religion, including any burden which results from a rule of general applicability.

(b) **Exceptions.**—An agency may substantially burden a person's free exercise of religion if the agency proves, by a preponderance of the evidence, that the burden is all of the following:

(1) In furtherance of a compelling interest of the agency.

(2) The least restrictive means of furthering the compelling interest.

71 P.S. § 2404.

In turn, Section 3 of the RFPA defines "substantially burden", as follows:

An agency action which does any of the following:

(1) Significantly constrains or inhibits conduct or expression mandated by a person's sincerely held religious beliefs.

(2) Significantly curtails a person's ability to express adherence to the person's religious faith.

(3) Denies a person a reasonable opportunity to engage in activities which are fundamental to the person's religion.

(4) Compels conduct or expression which violates a specific tenet of a person's religious faith.

71 P.S. § 2403.

Finally, Section 6 of the RFPA provides, in pertinent part:

(a) **General Rule.**—This act shall apply to any State or local law or ordinance and the implementation of that law or ordinance,

whether statutory or otherwise and whether adopted or effective prior to or after the effective date of this act. . . .

(b) **Exceptions.**—Notwithstanding subsection (a) and subject to existing religious exceptions, this act shall not apply to any of the following:

(1) A criminal offense under 18 Pa.C.S. (relating to crimes and offenses) . . . which is graded as a felony or misdemeanor.

71 P.S. § 2406(a) & (b)(1). As noted above, in this case, Parente was convicted of the summary offense under Section 601.04(e)(2) of the City's Ordinance, and acquitted of the summary Disorderly Conduct charge under Section 5503(a) of the Crimes Code.

8. This Court's review of a nonjury trial is limited to determine whether the findings of the trial court are supported by competent evidence, and whether the trial judge committed error in the application of law. *Commonwealth v. Hoffman*, 938 A.2d 1157 (Pa. Cmwlth.2007). As a reviewing court, this Court may not reweigh the evidence or substitute our judgment for that of the fact-finder. *Id.* Furthermore, the fact-finder is free to believe all, part or none of the evidence presented. *Id.* In addition, a challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. *Commonwealth v. Cosentino*, 850 A.2d 58 (Pa. Cmwlth.2004). Our review of a sufficiency of the evidence claim is limited to determining whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offense beyond a reasonable doubt. *Id.*

9. In the interest of clarity, we consolidate and reorder the claims raised by Parente in this appeal.

cient evidence and it is contrary to law; (2) the enforcement of the Ordinance violates his free of speech rights as guaranteed by the First Amendment; (3) the enforcement of the Ordinance violates his right to the free exercise of religion as guaranteed by the First Amendment; and (4) the enforcement of the Ordinance substantially burdens the free exercise of his religion in violation of Section 4 of the RFPA.[10]

■ Parente first claims that his conviction for violating Section 601.04(e)(2) of the Ordinance is not supported by sufficient evidence and it contrary to law. More specifically, Parente claims that the system used by him in this case, composed of two loudspeakers, an amplifier and a microphone, does not fit within the prohibition contained in Section 601.04(e)(2) of the City's Ordinance prohibiting the transmission of noise through a "portable, hand carried, audio amplification or reproduction device[ ]" that is plainly audible at a distance of seventy-five feet.

In order to demonstrate that Parente violated Section 601.04(e)(2) of the City's Ordinance, the Commonwealth was required to establish that he used a "portable, hand carried, audio amplification ... device[ ]" that created noise "which is plainly audible to an officer at a distance of seventy-five (75) feet from the source of the noise." Officer Sellers testified before the trial court that he heard the noise that Parente created when he and his partner "were a good 200 feet if not more" away from the clinic. N.T. 7/30/07 at 3–4. Officer Sellers testified that when he arrived at the clinic, he found Parente using two

loudspeakers, an amplifier, and a microphone to communicate with people on the street. *Id.* at 5, 7.

In addition, Parente testified before the trial court, in pertinent part, as follows:

Q Mr. Parente, you stated that you did attempt to look into applying for a permit for your protest?

A For the use of the sound system.

Q And you let the City know that you were using a handheld amplification device or microphone connected to a speaker during your protest.

\* \* \*

A Yes, I did say that I wanted to use a sound system, *a portable sound system,* to amplify the sound so that my voice could be heard.

N.T. 7/30/07 at 20–21 (emphasis added).

When viewed in a light most favorable to the Commonwealth, there is clearly sufficient evidence to sustain Parente's conviction. Parente himself characterized the sound system that he used at the site as "a portable sound system", and Officer Sellers testified that the noise created by that system was clearly audible more than seventy-five feet away. As a result, Parente's claim that his conviction is not supported by sufficient evidence and that it is contrary to law is patently without merit.

■ Parente next claims that the enforcement of the Ordinance violates his free speech rights as guaranteed by the First Amendment. More specifically, Parente claims that in addition to Section 601.04(e)(2) of the Ordinance, the City has

**10.** Parente raises a number of additional constitutional claims relating to the enforcement of the Ordinance. However, Parente did not raise any of these additional claims in the trial court prior to filing the instant notice of appeal. As a result, all of these claims have been waived for purposes of appeal. *See* Pa. R.A.P. 302(a) ("[I]ssues not raised in the low-

er court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Hawkins,* 295 Pa.Super. 429, 441 A.2d 1308, 1312 n. 6 (1982) ("[B]ecause issues, even those of a constitutional dimension, cannot be raised for the first time on appeal, his contentions have been waived.") (citations omitted).

also enacted Section 623.03[11] which creates an eight-foot "bubble zone" around individuals located within a 100–foot radius of a medical clinic. Parente contends that the enforcement of Section 601.04(e)(2), in conjunction with Section 623.03, violates his free speech rights because without the use of the amplification equipment, he would be compelled to shout his message which would, in turn, cause his intended audience to reject both him and his message and it would invite another arrest.

▮ It is well settled that, in general, ordinances are presumed to be constitutional, and a heavy burden is placed on those seeking to prove its unconstitutionality. *Reed v. Harrisburg City Council*, 927 A.2d 698 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 593 Pa. 419, 931 A.2d 629 (2007). With respect to a claim that an ordinance violates free speech rights as guaranteed by the First Amendment, the Pennsylvania Superior Court has previously noted:

> [T]he amplification of sound is protected by the First Amendment. It is well-established, however, that a governmental entity may impose, even in public forums, reasonable time, place and manner restrictions on protected speech. To be reasonable, the restrictions on protected speech must be content neutral, narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication of the information.

*Commonwealth v. Scott*, 878 A.2d 874, 880 (Pa.Super.), *petition for allowance of appeal denied*, 586 Pa. 749, 892 A.2d 823 (2005) (citations omitted).

In this appeal, Parente only challenges the Ordinance on the final consideration outlined above, i.e., that the Ordinance does not "leave open ample alternative channels for communication of the information." *See* Brief for Appellant at 27, 28. However, as indicated above, the provisions of Section 601.04(e)(2) of the Ordinance do not absolutely prohibit the use of a "portable, hand carried, audio amplification ... device[ ]". Rather, Section 601.04(e)(2) of the Ordinance merely prohibits the use of such a device in such a manner that it creates noise "which is plainly audible to an officer at a distance of seventy-five (75) feet from the source of the noise." Thus, the provisions of the Ordinance do not prohibit Parente's use of this "channel of communication", but merely regulate the volume level at which Parente may use this "channel of communication".

▮ It is well settled that such a regulation regarding the volume level of a particular channel of communication is not violative of the First Amendment to the United States Constitution on the basis that it does not "leave open ample alternative channels for communication of the information." *See Ward v. Rock Against Racism*, 491 U.S. 781, 802, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ("The final requirement, that the guideline leave open ample alternative channels of communication, is easily met. Indeed, in this respect the guideline is far less restrictive than regulations we have upheld in other cases, for it does not attempt to ban any particular manner or type of expression at a given place or time. Rather, the guide-

---

**11.** Section 623.03 of the City's Ordinance provides:

> No person shall knowingly approach another person within eight (8) feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill

to, displaying a sign to, or engaging in oral protest, education or counseling with such other person in the public way or sidewalk area within a radius of one hundred (100) feet from any entrance door to a hospital and/or medical office/clinic.

line continues to permit expressive activity in the bandshell, and has no effect on the quantity or content of that expression beyond regulating the extent of amplification. That the city's limitations on volume may reduce to some degree the potential audience for respondent's speech is of no consequence, for there has been no showing that the remaining avenues of communication are inadequate.") (citations omitted); *Scott*, 878 A.2d at 881 ("Lastly, we find that Section 12–1126 leaves open ample alternative channels for the enjoyment of music or other forms of communication. Section 12–1126 merely limits the volume of the sound radiating from reproduction devices in vehicles in the *City of Philadelphia*. Music, or any other amplified communication, coming from a sound reproduction device can be enjoyed—in its entirety—but simply at reasonable volume levels.").[12] As a result, Parente's claim

that the enforcement of the Ordinance violates his free speech rights is likewise without merit.

■ Parente next claims that the enforcement of the Ordinance violates his right to the free exercise of religion as guaranteed by the First Amendment. More specifically, Parente claims that the enforcement of Section 601.04(e)(2), in conjunction with Section 623.03, violates the First Amendment because it prevents him from exercising his religious beliefs and serving God by peacefully speaking with and counseling people outside of the clinic.

As a United States District Court has recently stated:

[F]ree exercise protections are triggered when a law "discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." When a

---

**12.** *See also Kovacs v. Cooper*, 336 U.S. 77, 87–88, 69 S.Ct. 448, 93 L.Ed. 513 (1949) ("[O]pportunity to gain the public's ears by objectionably amplified sound on the streets is no more assured by the right of free speech than is the unlimited opportunity to address gatherings on the streets. The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to the claims by citizens to comfort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself. That more people may be more easily and cheaply reached by sound trucks ... is not enough to call forth constitutional protection for what those charged with public welfare reasonably think is a nuisance when easy means of publicity are open. Section 4 of the ordinance bars sound trucks from broadcasting in a loud and raucous manner on the streets. There is no restriction upon communication of ideas or discussion of issues by the human voice, by newspapers, by pamphlets, by dodgers. We think that the need for reasonable protection in the homes or business houses from the distracting noises of vehicles equipped with such sound amplifying devices justifies the ordinance.") (footnotes omitted); *Spriggs v. South Strabane Township Zoning*

*Hearing Board*, 786 A.2d 333, 336 (Pa. Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 730, 797 A.2d 919 (2002) ("[F]inally, the Ordinance leaves open alternative means for appellant to communicate his religious beliefs, such as conforming his sign to the size requirements of the Ordinance for his [zoning] district, or, as the Board noted, attempting to declare his religious beliefs on a sign of this size in an I–2 district...."); *State v. Cornwell*, 149 Ohio App.3d 212, 221, 776 N.E.2d 572, 580 (2002) ("Finally, a time, place, or manner regulation must leave open ample alternative channels for communication of the information. [The Ordinance] is not a complete ban on playing music from automobiles. It permits music to be played at any volume that does not disturb the peace of others, i.e., that does not cause or tend to incite a breach of the peace. Appellant had ample opportunity to play music from his car, albeit at a volume lower than that which would cause a disturbance of the peace. Furthermore, in respect to [the Ordinance], appellant made no attempt to show that any of the alternative avenues of communication were inadequate. Therefore, the third requirement necessary to uphold a time, place, or manner regulation of speech has been fulfilled.") (citation omitted).

statute or regulation is applied in a discriminatory fashion based upon religious beliefs, strict scrutiny is triggered. "A law that is neutral and that is of general applicability does not need to be justified by a compelling interest even if the law has the incidental effect of burdening a particular religious practice."

*Brown v. City of Pittsburgh*, 543 F.Supp.2d 448, 487 (W.D.Pa.2008) (citations omitted).

As noted above, Section 601.04(a) of the Ordinance provides:

> (a) *Purpose:* Excessive noise is a serious threat to the welfare, contentment, safety, health and the peace and quiet of the residents of the City. It is the intent of this Ordinance to establish requirements to prevent excessive noise that may jeopardize the health and welfare of its residents or degrade their quality of life. This Ordinance is not intended and shall not be interpreted to be a regulation of the content of speech or communication; this Ordinance is intended to be entirely content-neutral; this Ordinance regulates only the time, place and manner of noise as defined below.

Thus, on its face, the Ordinance is a neutral law of general applicability enacted for the health and welfare of the City's residents, and Parente does not raise a claim to the contrary. *See Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464, 472 (8th Cir.1991) ("[A]bsent evidence of the City's intent to regulate religious worship, the ordinance is properly viewed as a neutral law of general applicability....").

In addition, in this appeal, Parente does not claim that the Ordinance discriminates against his religious beliefs, regulates or prohibits his conduct because it was undertaken for religious reasons, or that it was applied in a discriminatory fashion based upon his religious beliefs. Rather, Parente merely claims that the Ordinance prevents him "[f]rom exercising his right to freely exercise his religious beliefs and to serve God by peacefully speaking and counseling people approaching the clinic ...", and from "[f]ollow[ing] the dictates of his conscience and serv[ing] God by peacefully preaching and counseling people outside the clinic." Brief for Appellant at 30.

■ The Free Exercise Clause of the First Amendment does not compel reversal in a case where, as here, a neutral law of general applicability incidentally burdens the rights guaranteed by that provision. *See, e.g., Brown*, 543 F.Supp.2d at 487 ("Brown has failed to show that the enforcement of [Sections 623.03 and 623.04[13] of] the Ordinance against her substantially burdens her right to Free Exercise. The Ordinance restricts only the place where Brown may counsel listeners regarding her religious beliefs. It in no way forecloses her ability to engage in sidewalk counseling or leafleting on any and all issues she considers important to her stated deeply-held religious beliefs. Brown is not prohibited from speaking or leafleting in the exercise of her religion; instead, it is only the location and manner in which she may engage in her activities that is limited. Brown, who bears the

---

**13.** Section 623.04 of the Ordinance provides, in pertinent part:

> No person or persons shall knowingly congregate, patrol, picket or demonstrate in a zone extending fifteen (15) feet from any entrance to the ... health care facility. This section shall not apply to police and public safety officers, fire and rescue personnel, or other emergency workers in the course of their official business, or to authorized security personnel employees or agents of the ... medical office or clinic engaged in assisting patients and other persons to enter or exit the ... medical office, or clinic.

burden of proving a substantial burden on the practice of her religion, has not shown that the enforcement of [Sections 623.03 and 623.04 of] the Ordinance has placed a substantial burden on her right to free exercise of her religion.") (citations omitted).[14] As a result, Parente's claim that the enforcement of the Ordinance violates his free exercise rights is likewise without merit.

 Finally, Parente also claims that the enforcement of the Ordinance substantially burdens his free exercise of religion in violation of Section 4 of the RFPA. More specifically, Parente claims that the enforcement of Section 601.04(e)(2), in conjunction with Section 623.03, "substantially burdens" his right to the free exercise of religion in violation of Section 4 of the Act because it impairs his ability "[t]o engage in activities which are fundamental to his Christian religion ..."[15] such as "[p]eacefully counsel[ing] and preach[ing] the Word of God to people approaching the abortion clinic." Brief for Appellant at 17.

Section 5(a) of the RFPA provides, in pertinent part, that "[a] person whose free exercise of religion has been burdened ... in violation of section 4 may assert that violation against an agency ... as a ... defense in any judicial ... proceeding."

71 P.S. § 2405(a). In addition, Section 5(f) of the RFPA provides, in pertinent part, that "[i]f a person asserts a ... defense in accordance with this section and proves, by clear and convincing evidence, that the person's free exercise of religion has been burdened ... in violation of section 4, a court may award the person such declaratory or injunctive relief as may be appropriate...." 71 P.S. § 2405(f).

Based on the foregoing, a United States District Court has noted:

Viewing the RFPA as a whole, according to the plain meaning of all of its terms and in accordance with the canons of construction, and considering the foregoing analysis of 'substantial burden' in the context of the Free Exercise Clause and similar freedom of religion restoration acts, and mindful of the General Assembly's intention to restore the traditional (pre-*Smith*) free exercise of religion standards, ... a Plaintiff challenging ... agency action under the Pennsylvania RFPA must meet the threshold burden of showing, by clear and convincing evidence, that there is or will be denial or *substantial* infringement of *conduct or expression* which violates a specific tenet of his or her religious faith, not simply that the legis-

14. *See also Tenafly Eruv Association, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165, 167 (3rd Cir.2002), *cert. denied*, 539 U.S. 942, 123 S.Ct. 2609, 156 L.Ed.2d 628 (2003) ("If a law is 'neutral' and 'generally applicable', and burdens religious conduct only incidentally, the Free Exercise Clause offers no protection. *Employment Div. v. Smith*, [494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)].... Because Ordinance 691 is neutral and generally applicable on its face, if the Borough had enforced it uniformly, *Smith* would control and the plaintiffs' claim would accordingly fail...."); *Howard v. City of Tulsa*, 712 P.2d 797, 799 (Okla.Crim.1986) ("With respect to appellant's claim that Section 401(B) unduly restricts the free exercise of his religion, we note that the ordinance does not prohibit the

dissemination of his religious views, nor does it prevent the playing of amplified music. All the ordinance requires is that if music is played, that the volume of the loudspeakers be adjusted so that the peace of citizens inside their dwellings is not disturbed. We do not believe that such a request is unreasonable, or that any First Amendment Freedom is thereby abridged.") (citation omitted).

15. As noted above, Section 3 of the RFPA defines "substantially burden", in pertinent part, as "[a]n agency action which ... [d]enies a person a reasonable opportunity to engage in activities which are fundamental to the person's religion." 71 P.S. § 2403.

lation or agency action has some *de minimis,* tangential or incidental impact or is at odds with their religious beliefs. *Combs v. Homer Center School District,* 468 F.Supp.2d 738, 771 (W.D.Pa.2006) (emphasis in original).

In the instant case, Parente testified at trial regarding the religious purpose underlying his activities, in pertinent part, as follows:

Q Why were you at the abortion clinic?

A Because we believe that babies are dying there to abortion, and we offer mothers going in to have abortions free help. Also preach the Gospel and what God's word, the Bible, says about abortion.

* * *

Q Mr. Parente, did the amplification device help you to address people going into the clinic?

A Yes, it did.

Q In fact, when Officer Sellers said you used the equipment in his presence, what were you doing with it?

A Talking to patients entering the abortion clinic.

* * *

Q Mr. Parente, in using the device, using the amplifier, the loudspeakers, what was your purpose? What were you trying to do? What was your intention?

A It's become necessary to use an amplification device to be heard especially without shouting, which in the case of being at the abortion clinic it's essential to show people that you care about them, not just that you're angry or yelling about something.

So we thought it was most effective and deemed necessary in order to be heard over the buses. So we chose this method.

N.T. 7/30/07 at 14–15, 17–18, 22.

Based on the foregoing, it is clear that Parente utterly failed to establish at trial, by clear and convincing evidence[16], that the enforcement of the Ordinance "substantially burdens" his right to the free exercise of religion in violation of Section 4 of the Act because it denied him "[a] reasonable opportunity to engage in activities which are fundamental to [his] religion." In fact, Parente never testified that his activities of counseling and preaching to people approaching the clinic constitute "activities which are fundamental to [his] religion" as provided in Section 3 of the Act. Rather, at best, Parente's testimony merely establishes that he engaged in these activities based upon his religious beliefs or that they flowed from a religious mission.

Thus, contrary to Parente's assertion, the enforcement of Section 601.04(e)(2) of the Ordinance, in conjunction with Section 623.03, does not "substantially burden" his right to the free exercise of religion in violation of Section 4 of the Act. *See, e.g.,* *Ridley Park United Methodist Church,* 920 A.2d at 960 ("We agree with Property Owners that nothing here impinges on the religious activities of the Church. While it aided in carrying out the Church's religious mission, the daycare is not a fundamental religious activity of a church. For example, ministering to the sick can flow from a religious mission, but it is not a

---

**16.** The Pennsylvania Supreme Court has noted, "[t]he standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester,* 521 Pa. 300, 304, 555 A.2d 1202, 1203–1204 (1989) (citations omitted).

fundamental religious activity of a church because a hospital may be built to satisfy that mission. Moreover, the lack of a day-care only had a *de minimis* impact on the Church's opportunity to engage in fundamental religious activities to teach religious classes because, as the Pastor testified, the Sunday school, vacation Bible school, religious workshops for members, special holiday services, counseling and coffee hour the first Sunday of each month all provided religious instruction. Because the Church failed to meet its burden of proving that it was substantially denied a reasonable opportunity to engage in activities that were fundamental to its religion, the Board erred in granting the Church's application to operate a daycare on its property based on a violation of the RFPA....").[17]

Accordingly, the judgment of sentence is affirmed.

### *O R D E R*

AND NOW, this 9th day of September, 2008, judgment of sentence entered in the Court of Common Pleas of Allegheny County, dated July 30, 2007 at No. S.A. 712 of 2007, is AFFIRMED.

---

**17.** *See also Combs,* 468 F.Supp.2d at 771 ("[P]laintiffs cannot show that Act 169, on its face, places *any* restriction or infringement of the *practice* or *exercise* of their religion, but only that it interferes with their sincerely held religious *beliefs* ....") (emphasis in original).