# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Interboro Packaging Corporation, :
                        Appellant :
                                   : No. 473 C.D. 2018
      v.                     : Argued: December 11, 2018
                                    :
West Whiteland Township :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**               **FILED: January 4, 2019**

        In this appeal involving a publicly bid contract, Interboro Packaging Corporation (Interboro) asks whether the Court of Common Pleas of Chester County (trial court) erred in denying its post-trial motions following a non-jury trial. The trial court found in favor of West Whiteland Township (Township) and against Interboro on Interboro's breach of contract suit and in favor of the Township on its counterclaim for breach of contract. The trial court also awarded the Township attorney fees and expenses. The litigation arose out of Interboro's failure to provide the Township with trash bags that conformed to the specifications set forth in the Township's request for proposals (RFP). Upon review, we affirm on the trial court's opinions.

## I. Background

        The trial court made the following findings of fact. Interboro is a corporation engaged in the business of selling and distributing plastic liners and trash bags in 48 states.

In August 2013, the Township issued an RFP, Specification Number 2013-17, for 400,000 trash bags for use in its existing "Pay as You Throw" municipal trash and recycling program. The RFP required bidders to comply with the following specifications:

(a) Size - 30" wide by 37" long, 33 gallon plastic trash bags

(b) Color - Black bag with **white** printed logo

(c) Resin - Linear Low Density, 100% virgin Hexene

(d) <u>Thickness - 1.9 mils (minimum)</u>

(e) Seal - Flat seal

(f) Printing

> (i) Logo on all bags shall have printing on one side in repeating pattern.
>
> (ii) Printing color shall be **white**.
>
> (iii) Lettering 10" high x 19" wide from beginning of first W to end of T.
>
> (iv) Each letter width is 1½" thick.
>
> (v) 1" wide vertical stripe on both ends of bag indent 3" from center of stripe to edge of bag. Stripe shall be from top of bag to bottom of bag. See attached picture.

(g) Packaging - Bags shall be individually cut and packaged flat in quantities of 200 per case. All cases shall be made of sturdy cardboard.

(h) Twist Ties - Each case shall contain a minimum of 200 twist ties. Ties shall be wire encased in a paper covering and shall be perforated for easy separation.

(i) Quantity - Bid process shall be based upon 400,000 bags to meet specifications.

Tr. Ct. Dec., 8/28/17, Finding of Fact (F.F.) No. 5 (quoting Ex. P-1) (underlined emphasis added) (bolded emphasis in original).

The RFP required each bidder to submit a minimum of 20 sample bags to the Township for review and inspection prior to an award of the contract. The sample bags were required to meet the specifications and be representative of the bags the bidder would supply if awarded the contract. The RFP also stated that the Township reserved the right to require a 90-day evaluation period to determine the quality of the bags and if the bags did not meet the Township's standards and expectations, the contract would be terminated and any unused bags would be returned to the bidder at the bidder's expense. Further, the bidder would be required to reimburse the Township for the full cost of the unused quantity of bags.

On August 20 and 26, 2013, Interboro submitted bids in response to the RFP through PennBid ("Pennsylvania's Electronic Document & Bid Management Program"). Ex. P-2. Interboro's bids were for Super Hexene trash bags, as per sample #1, at a price of $22.82 per case or $45,640. The cost to Interboro to buy the bags from its supplier, Inteplast Group, LTD. (Inteplast) was $19.59 per case or $39,180. This price was for 1.5 mil trash bags, which Interboro used as the basis for its bid, intentionally ignoring the 1.9 mil minimum thickness requirement. Interboro initially requested pricing from Inteplast on 1.9 mil bags that actually satisfied the RFP's specifications. The cost to Interboro would have been $24.82 per case or $49,640 for bags with a thickness of 1.9 mils.

Including Interboro, a total of four bidders responded to the RFP. Assuming all other bidders submitted bids based on bags that actually complied with the 1.9 mil minimum thickness specification, while Interboro undisputedly submitted a bid that was based on thinner and cheaper-to-manufacture bags, Interboro knowingly tainted the entire bidding process to win the contract. At no time in the bidding phase did Interboro advise the Township that the 1.9 mil specification was thicker than needed. Nor did Interboro advise the Township that it would provide a bag that was less than 1.9 mils thick. Interboro submitted at least 20 sample trash bags as part of its bid. In addition to the sample bags, Interboro sent the Township a "Sample Bag Compliance Letter" (sample letter), which stated:

> All shipments made consistent with the enclosed samples will be deemed in full conformance with bid specifications. We are relying upon approval of these samples for compliance of [our] bid and will ship only such bags, in the specified size/color. Acceptance of our bid shall conclusively constitute approval of the enclosed samples as [in] conformity with bid specifications.

F.F. No. 18 (citing Ex. P-5).

Abraham Jeremias, Interboro's President (Interboro's President), testified he made the decision to send the Township sample bags that he knew were less than 1.9 mils thick despite knowing that the RFP specifications called for 1.9 mil thick bags.

On August 27, 2013, Denise Serino, the Township's Purchasing Agent, wrote a memorandum to Michael Cotter, Township Manager, and Cathy

4

Kleponis, the Township's Finance Director, recommending that the Township Board of Supervisors award the contract to Interboro, the lowest bidder. The contract covered a two-year supply of trash bags in the amount of $22,820 in 2013 and $22,820 in 2014 for a total of $45,640. Purchasing Agent's memorandum indicated that Township staff tested all the bags submitted with the bids. Before, during, and after the testing, Purchasing Agent took great care to ensure the bags received from each bidder were kept in the envelope in which they were sent and were never mixed with others. The trial court found that the Township elicited significant, credible testimony regarding the chain of custody of the sample bags from receipt through testing and trial.

Conversely, the trial court explained, Interboro did not produce Malky Weiss, the employee who actually sent the now-contested sample bags to the Township. Interboro's only "evidence" questioning the chain of custody of the bags was the testimony of its President and its representative, Rachel Loeb (Interboro's representative), who simply testified in a conclusory manner that the bags in the envelope marked as Exhibit D-38 were not and could have come from Interboro. F.F. No. 24.

The Township's Public Works Director and Assistant Public Works Director performed rudimentary testing on the sample bags, and Purchasing Agent recorded the ratings, based on the Township's system. The purpose of the testing process was to ensure the bidder's bags were as good as or better than the bags the Township was presently using.

Ultimately, the Township awarded the contract to Interboro. Interboro sent a letter to the Township dated October 1, 2013 (waiver letter), which acknowledged receipt of the contract and stated that the samples provided during the bidding process would serve as "the benchmark for all tests and future inspections of the quality and strength of the liners provided." F.F. No. 28 (citing Ex. P-7). The waiver letter stated: "Upon formal approval of our samples we shall manufacture the bags exactly according to the bid scope, the specified size & color. The purpose of the samples is to test the strength of the bag and the material we are offering." F.F. No. 29 (citing Ex. P-7). The waiver letter also stated that by signing the waiver, the Township acknowledged that it

> examined, inspected and approved the quality of the sample Interboro provided with the bid, and that all future shipments in accordance [with] the sample quality approved by you will be accepted. Of course, you have the right to inspect each shipment to confirm the product delivered conforms to the sample provided by Interboro and approved by you.

F.F. No. 30 (citing Ex. P-7). The Township Manager signed the waiver letter on the Township's behalf. At trial, Interboro's President testified that in his view the waiver letter made the Township aware that everything would be based on the sample bags, not on the bid specifications.

On October 24, 2013, the Township ordered the bags from Interboro for a total price of $45,640. After receiving the award, Interboro submitted a purchase order to Inteplast to manufacture 1.5 mil bags at a cost of $19.59 per case.

On October 23, 2013, the Township and Interboro entered into a West Whiteland Township Independent Contractor Services Agreement (Agreement). Paragraph 10(A) of the Agreement states:

> This Agreement and the exhibits attached hereto contain the entire agreement between the parties, and supersede all prior communications, representations or agreements, whether oral or written, between the parties with respect to the subject matter of this Agreement. Any additions or alternations to this Agreement shall have no force and effect unless made in writing and signed by the parties.

F.F. No. 36 (citing Ex. P-9).

The Agreement was signed *after* the Township Manager signed the waiver letter; therefore, the Agreement superseded the waiver letter as stated in Paragraph 10(A) of the Agreement.

In early November 2013, Interboro had Inteplast deliver 1,936 cases of trash bags purportedly containing 387,200 trash bags to the Township. Immediately upon arrival of the shipment, the Township's Purchasing Agent noticed that the logo printing was incorrect and the bags felt thinner and were more transparent, indicating that the thickness was incorrect. The Township's Purchasing Agent informed the truck driver that the Township rejected the shipment and noted that the "bags did not meet specs" on the bill of lading. F.F. No. 40 (citing Ex. D-9; Tr. Ct., Non-Jury Tr., Notes of Testimony (N.T.), 4/4/17, at 172-73). The printed logo on the delivered bags was clearly incorrect and the parties did not dispute this point.

7

Interboro's President testified that the bags Interboro actually delivered to the Township were 1.5 mils, and he claimed they matched the sample bags previously provided. Interboro asserted "the delivered bags were at least as good as those that would actually meet the 1.9 mil [thickness] specification." F.F. No. 43 (citing N.T., 4/3/17, at 205). Even if this was so, the trial court explained, the Township had to answer to residents who had no knowledge of the properties of Hexene or its strength. For that reason, the Township believed thickness, as evaluated by a layperson (resident) by sight and touch, to be an important consideration in its trash bag purchases. The trial court stated the Township issued a clear, unambiguous RFP, and it was justified in expecting bidder compliance with the terms.

Interboro had the bags tested by Inteplast. In an email from November 2013, an Inteplast representative confirmed that an Interboro representative asked Inteplast to provide the physical properties of the delivered bags, without disclosing the thickness.

The Township presented the expert testimony of John Boschuk, Jr., Professional Engineer, Certified Forensic Engineer (Township's Expert), to testify regarding his measurements of the properties of the trash bags supplied by Interboro to the Township. The Township's Expert was provided with 10 bags to test including 5 of the Interboro sample bags contained in Exhibit D-38 and 5 of the bags ultimately delivered to the Township contained in Exhibit D-39. The Township's Expert tested 3 of 5 Interboro sample bags. The first bag measured an average of 1.52 mils, the second bag measured an average of 1.56 mils, and the

8

third bag measured an average of 1.53 mils. The Township's Expert also tested 3 of 5 bags that were delivered to the Township by Inteplast on behalf of Interboro after execution of the Agreement. The first bag measured an average of 1.21 mils, the second bag measured an average of 1.29 mils, and the third bag measured an average of 1.13 mils. The Township's Expert performed various other industry-standard tests on both the sample and delivered bags. He opined that the delivered bags were weaker than the sample bags and that a 1.9 mil trash bag would be stronger than both the sample and delivered bags. Therefore, the trial court explained, even if the waiver letter was enforceable, as Interboro argued, Interboro would still have been in breach of the Agreement because the delivered bags were not as good as the sample bags.

Pursuant to Section 9(A)(5)(A) of the Agreement, the Township sent Interboro preliminary notice of its intention to terminate the Agreement. The Township's letter notified Interboro that the Township was considering terminating the Agreement for fault as the delivered bags failed to meet the following specifications: linear low density of 100% virgin Hexene, thickness of not less than 1.9 mils, and logo placement. The letter also requested a conference with Interboro to discuss methods of performing the contract.

In December 2013, a conference call was held between Interboro's President, the Township Manager, and the Township Solicitor in which the Township informed Interboro's President that Interboro could cure the default by providing bags that conformed to the RFP or by providing bags that conformed to the sample bags. Interboro's President did not offer to perform either of the

9

proposed cure methods but instead offered to provide a bag he insisted was better than the sample bags.

Because it was in need of bags, the Township ordered replacement bags from the second lowest bidder, Central Poly Corporation (Central Poly). On December 17, 2013, the Township submitted a purchase order to Central Poly for 146,000 trash bags at a price of $23.80 per case ($0.1190 per bag) for a total cost of $17,374. In April 2014, the Township purchased 139,400 bags from Central Poly at a price of $23.80 per case ($0.1190 per bag) for a total cost of $16,588.60. About a month later, the Township purchased 120,000 bags from Central Poly at a price of $23.80 per case ($0.1190 per bag) for a total cost of $14,280. The Township ordered a total of 405,400 bags from Central Poly. Removing the excess 5,400 bags, the Township paid Central Poly $47,600 for the 400,000 bags it had to order in light of Interboro's breach of the Agreement. As a result, the Township paid $1,960 more to buy bags from Central Poly than it would have had Interboro not breached the Agreement.

By letter dated January 10, 2014, counsel for the Township notified Interboro's President that, pursuant to Section 9(A)(5)(B) of the Agreement, the Township was terminating the Agreement. The stated reason for termination was that Interboro failed to satisfy the conditions to cure as established during the December 2013 telephone conference by showing the delivered bags: (1) satisfied the specifications set forth in the RFP; (2) were the same as the sample bags provided to the Township; and (3) satisfied the specified logo requirement.

10

Interboro subsequently filed suit against the Township for breach of contract and intentional interference with a contractual relationship. The Township asserted a counterclaim for breach of contract and sought damages of $1,960 as well as attorney fees and costs.

Thereafter, the trial court held a three-day non-jury trial. After trial, the trial court issued a decision in favor of the Township and against Interboro on Interboro's complaint. The trial court made the following conclusions of law on Interboro's breach of contract claim. The Agreement is a valid, enforceable contract between Interboro and the Township, and it constituted the entire contract between the parties, superseding the waiver letter. The parties had a duty to deal in good faith, and each party claimed that the other party violated the Agreement. Interboro claimed the Township engaged in multiple instances of bad faith conduct. However, applying the doctrine of unclean hands, the trial court determined that it could not ignore Interboro's conduct in intentionally misleading the Township about the thickness of the bags from the offer stage of the contract through the attempted cure process. The trial court concluded Interboro did not meet its burden of proving the Township breached the Agreement; therefore, Interboro was not entitled to any damages.[1]

---

[1] As to Interboro's intentional interference with contractual or prospective contractual relationship claim, the trial court determined that a contractual relationship existed between Interboro and its bonding company, Travelers Casualty and Surety Company of America. As a direct result of Interboro's breach of the Agreement, the trial court stated, the Township filed a claim with Travelers in January 2014. The trial court determined the Township was justified in submitting a claim to Travelers, based on Interboro's breach of the Agreement. Interboro does not challenge the trial court's determination on this issue in its appeal to this Court.

In addition, as to the Township's counterclaim for breach of contract, the trial court determined Interboro breached the Agreement by failing to deliver bags to the Township in compliance with the RFP, as incorporated into the Agreement. Further, the trial court determined Interboro "intended to deceive the Township from the inception of the bidding process by knowingly presenting a bid that was based on a cheaper, intentionally non-conforming product to which [it] later attempted in furtherance of its pre-planned scheme, to bind the Township by procuring the signed waiver letter." Tr. Ct. Dec., Concl. of Law No. 9.

The trial court further determined that the Township rejected the non-conforming goods within a reasonable time (immediately at delivery and then again formally after allowing Interboro a chance to cure its breaches) after their delivery in compliance with 13 Pa. C.S. §2602(a) ("Manner and effect of rightful rejection") (Title 13 of the Pennsylvania Consolidated Statutes contains the Uniform Commercial Code, 13 Pa. C.S. §§1101-9809). The trial court determined the Township provided Interboro with the opportunity to cure the defective delivery, as required by the Agreement and 13 Pa. C.S. §2508[2] ("Cure by seller of

---

[2] This Section states, in its entirety:

> **(a) General rule.**--Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.
>
> **(b) Rejection of tender which seller believed acceptable.**--Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies

**(Footnote continued on next page…)**

12

improper tender or delivery; replacement"), by either providing bags that conformed to the RFP or by providing bags that conformed to the sample bags. Interboro failed to cure the defective delivery as proposed by the Township. The trial court further determined the Township rightfully rejected the bags and was permitted to cancel the Agreement pursuant to 13 Pa. C.S. §2711 ("Remedies of buyer in general; security interest of buyer in rejected goods").

In addition, pursuant to 13 Pa. C.S. §2712(a) ("'Cover'; procurement by buyer of substitute goods"), the trial court explained, after a breach a "buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due

---

**(continued…)**

> the buyer have a further reasonable time to substitute a conforming tender.

13 Pa. C.S. §2508.

In its Pa. R.A.P. 1925(b) Statement, Interboro asserted it had the right to cure, which it offered to do, and each offer to cure was wrongfully rejected by the Township. It reiterates this assertion in its brief to this Court. Additionally, in its brief to this Court, Interboro briefly argues that, under 13 Pa. C.S. §2508(b), it had reasonable grounds to believe its non-conforming tender would be acceptable based on the waiver letter and the Sample Bag Compliance letter, giving it further reasonable time to substitute conforming tender. Interboro did not raise this issue in its lengthy and detailed 1925(b) Statement, resulting in waiver. See Kull v. Guisse, 81 A.3d 148, 160 (Pa. Cmwlth. 2013) ("Issues not included in a party's 1925(b) Statement are waived and will not be addressed on appeal."); Pa. R.A.P. 1925(b)(4)(vii).

In any event, contrary to Interboro's assertion, the trial court's supported findings reveal that the bags Interboro actually delivered to the Township after execution of the Agreement, were inferior in thickness to the bags required under the specifications in the RFP *and* to the sample bags Interboro provided to the Township. F.F. Nos. 45-50; Tr. Ct., Non-Jury Tr., Notes of Testimony (N.T.), 4/4/17, at 153-55, 174-75, 198-99, 239-41; N.T., 4/5/17, at 4-5; Ex. D-34. Thus, Interboro's argument, that it had reasonable grounds to believe its non-conforming tender would be acceptable based on the waiver letter and the Sample Bag Compliance letter, lacks record support.

13

from the seller." Pursuant to 13 Pa. C.S. §2712(b), "[t]he buyer may recover from the seller as damages the difference between the cost of cover and the contract price, together with any incidental or consequential damages …."

Here, the trial court determined, the Township purchased replacement or "cover" trash bags from Central Poly as a result of Interboro's breach. Concl. of Law No. 16. The trial court determined the Township suffered losses in the amount of $1,960 to purchase the replacement trash bags from Central Poly. Pursuant to Section 9(A)(3)(A)(3) of the Agreement and 13 Pa. C.S. §2712(b), Interboro was obligated to pay the $1,960 incurred by the Township. Further, the trial court determined, pursuant to Sections 9(A)(3)(A)(1) and 10(L) of the Agreement, the Township was entitled to reasonable attorney fees and costs.

Interboro filed a motion for post-trial relief, which the trial court denied. Additionally, the Township filed a petition for attorney fees and costs, which the trial court granted.

Interboro filed a notice of appeal.[3] The trial court directed Interboro to file a concise statement of the errors complained of on appeal, which it did. The trial court subsequently issued a thoughtful and thorough opinion pursuant to Pa.

---

[3] Interboro filed its notice of appeal to the Superior Court, which transferred the appeal to this Court.

14

R.A.P. 1925(a) in which it responded to the numerous issues raised in Interboro's

1925(b) Statement.  This matter is now before us for disposition.[4]

---

[4] As a threshold procedural issue, the Township argues Interboro's single notice of appeal from the trial court's two orders, the order denying Interboro's post-trial motions and the order awarding the Township attorney fees and costs, should be quashed.  It asserts this Court holds it is improper to appeal multiple orders through a single notice of appeal.

"Under our Appellate Rules, an appeal in a civil case in which post-trial motions are filed lies from the entry of judgment."  K.H. v. J.R., 826 A.2d 863, 871 (Pa. 2003).  Although an appeal from an order denying post-trial motions is interlocutory, see Pa. R.A.P. 301(a), (c), (d), *Note*, where judgment is subsequently entered, the appeal is "treated as filed after such entry and on the date thereof."  Pa. R.A.P. 905(a); see K.H.

> Further, the *Note* to Pa. R.A.P. 341 states (with emphasis added):
>
> A party needs to file only a single notice of appeal to secure review of prior non-final orders that are made final by the entry of a final order, see [K.H.] (following trial); Betz v. Pneumo Abex LLC, 44 A.3d 27, 54 (Pa. 2012) (summary judgment).  Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed.  Commonwealth v. C.M.K., 932 A.2d 111, 113 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgments of sentence).
>
> In addition, the *Note* to Pa. R.A.P. 1701 states (with emphasis added):
>
> The Supreme Court has held that, so long as a motion for attorneys' fees has been timely filed, a trial court may act on that motion under subdivision (b)(1) even after an appeal has been taken.  Samuel-Bassett v. Kia Motors Am., Inc., [34 A.3d 1, 48 (Pa. 2011)].  Thus, unlike the court actions discussed in [Pennsylvania Industrial Energy Coalition v. Pennsylvania Public Utility Commission, 653 A.2d 1336, 1344-45 (Pa. Cmwlth. 1995), aff'd, [670 A.2d 1152 (Pa. 1996)], an award of attorneys' fees constitutes a separately appealable order that would be reviewable upon [the] filing of a timely separate notice of appeal, measured from the date the fee award order was entered.

Further, in M.R. Mikkilineni v. Amwest Surety Insurance Co., 919 A.2d 306, 311 (Pa. Cmwlth. 2007), this Court explained (with emphasis added):

**(Footnote continued on next page…)**

15

In [General Electric Credit Corp. v. Aetna Casualty & Surety Co., 263 A.2d 448 (Pa. 1970)], our Supreme Court reviewed the propriety of filing one appeal from multiple judgments. There, the plaintiff corporation filed an action against seven insurance companies to recover damages sustained in a fire. A jury returned a verdict in favor of the plaintiff corporation against five of the seven defendants; two defendants were found not liable. After post-trial motions were denied, separate judgments were entered as to each defendant. However, the plaintiff corporation filed one notice of appeal as to all seven defendants.

Relevant for current purposes, the Court considered the appeal from two orders denying post-trial relief against the exonerated defendants. Although the Court ultimately disposed of the appeal on the merits, it recognized the established principles that '[t]aking one appeal from several judgments is not acceptable practice and is discouraged' and that 'a single appeal is incapable of bringing on for review more than one final order, judgment or decree ….' [Id. at 452].

This is by no means an inflexible rule. A court may refrain from quashing an appeal in the interests of judicial economy. Id. Nevertheless, a court will quash an appeal where review will not provide a meaningful remedy. Id.

Here, the trial court issued its initial decision in favor of the Township on the claims raised in Interboro's complaint and the Township's counterclaim in late-August 2017. Interboro filed post-trial motions, which the trial court denied by order dated December 27, 2017. On the same date, the trial court entered a separate order granting the Township's petition for attorney fees and costs. Thereafter, on January 9, 2018, the trial court entered judgment on its decision on the merits, awarding the Township $1,960 in damages. On January 26, 2018, the trial court entered judgment on its decision granting the Township's petition for attorney fees and costs. All of these orders and judgments were entered on the same docket. On January 26, Interboro filed a notice of appeal "from the Orders of the Honorable Allison Bell Royer entered on August 28, 2017 and the two Orders of The Honorable Allison Bell Royer entered on December 27, 2017 [(denying Interboro's post-trial motions and granting the Township's petition seeking an award of attorney fees and costs)]." Reproduced Record at 1268a.

Although Interboro should have filed separate notices of appeal from the trial court's entry of judgment on its decision on the merits and the trial court's order granting the Township's petition for an award of attorney fees and costs, we may refrain from quashing the appeal in the interests of judicial economy. Mikkilineni; see G. Ronald Darlington et al.,

**(Footnote continued on next page…)**

16

## II. Issues

On appeal, Interboro raises five issues, with several sub-issues. More specifically, Interboro asserts: (1) it performed its obligations under the contract; (2) it made good faith offers to cure the defective tender, which the Township wrongfully rejected[5]; (3) the Township breached the contract and violated public

---

**(continued…)**

PENNSYLVANIA APPELLATE PRACTICE §512:2 (2017-2018 ed.) ("Pennsylvania's appellate courts have uniformly and traditionally discouraged the taking of one appeal from several orders, but have, pursuant to the Supreme Court's decision in <u>General Electric Credit Corporation</u>, refrained from quashing such appeals.") (footnote omitted). Moreover, in both its main brief and its reply brief Interboro *presents no developed* challenge to the trial court's award of attorney fees and costs. Instead, Interboro's briefs challenge the trial court's decision on the merits, and it essentially asserts that, *if* this Court reverses the trial court's decision on the merits, it should also reverse the trial court's award of attorney fees and costs. Thus, Interboro only presents a developed challenge to the trial court's decision on the merits, from which it timely appealed. Thus, we decline to quash Interboro's notice of appeal.

[5] At oral argument before this Court, Interboro advanced a new, different argument on this issue. It asserted that the trial court erred in failing to recognize that the Township *accepted* Interboro's offer to cure the defective tender. Contrary to this new assertion, the trial court's supported findings and determinations reveal that:

> 52. On or about December 15, 2013, a conference call was held among [Interboro's President], [the Township Manager], and the Township Solicitor wherein the Township told [Interboro's President] that Interboro could cure the default <u>by either providing bags that conformed to the RFP or providing bags that conformed to the sample bags</u>. (Exhibit P-20; N.T. 4/5/17 at 56-59).

> 53. [Interboro's President] <u>did not offer to perform either of the proposed cure methods</u> but instead offered to provide a bag that he insisted was better than the sample bags. (N.T. 4/5/17 at 59-60).

Tr. Ct. Dec., 8/28/17, Findings of Fact (F.F.) No. 52-53 (emphasis added). Further, the trial court explained:

> The Township provided Interboro with the opportunity to cure by either providing bags that conformed to the RFP or at least by

**(Footnote continued on next page…)**

bidding law by failing to re-bid the contract before awarding it to Central Poly; (4) the trial court erred by admitting and excluding vital evidence; and (5) based on the trial court's findings, the trial court erred in concluding there was a meeting of the minds.

### III. Discussion

Following a non-jury trial, this Court's review is limited to determining whether the trial court's findings are supported by competent evidence, and whether the trial court committed error in the application of the law.

_____

**(continued…)**

> providing bags that conformed to the sample bags. (Exhibits P-16, P-20; N.T. 4/5/17 at 56-59). Interboro, however, did not offer to perform either of the proposed cure methods but instead counter-offered to provide a bag that [Interboro's President] insisted was better than the sample bags. (N.T. 4/5/17 at 59-60, 93-94). There is no support for Interboro's argument that it was permitted to cure by providing a so-called better bag. The Township provided Interboro with two reasonable options for curing the defective delivery, neither of which Interboro performed. …
>
> [T]his Court agrees that the testimony supports the statement that during the December 15, 2013 conference call the Township told [Interboro's President] that Interboro could cure the default by either providing bags that conformed to the RFP or the sample bags. (Exhibit P-20; N.T. 4/5/17 at 56-59). … [Interboro's President] did not offer to perform either of the proposed cure methods, but instead offered to provide a bag that in his mind was better than the sample bags. (N.T. 4/5/17 at 59-60). The Township was certainly not required to accept whatever type of bags Interboro felt like supplying after ignoring the RFP.

Tr. Ct., Slip Op., 3/26/18, at 15, 21 (emphasis added). This Court cannot disturb the fact-finder's supported determinations, which arise from its resolution of evidentiary conflicts and issues of credibility. Commonwealth v. Parente, 956 A.2d 1065 (Pa. Cmwlth. 2008).

18

<u>Commonwealth v. Parente</u>, 956 A.2d 1065 (Pa. Cmwlth. 2008). As a reviewing court, we may not reweigh the evidence or substitute our judgment for that of the fact-finder. <u>Id.</u> The fact-finder is free to believe all, part or none of the evidence presented. <u>Id.</u>

After reviewing the record, the parties' briefs, and the law in this area, we see no need to elaborate on the trial court's thorough and thoughtful opinions. The issues presented were ably resolved in the comprehensive opinions of the Honorable Allison Bell Royer. Therefore, we affirm on the basis of the trial court's opinions in the matter of <u>Interboro Packaging Corporation v. West Whiteland Township</u> (Dkt. No. 2014-02781-CT, filed August 28, 2017 and March 26, 2018) (C.P. Chester).

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Interboro Packaging Corporation, : 
                       Appellant : 
                               :    No. 473 C.D. 2018 
              v. : 
                               : 
West Whiteland Township : 

## **O R D E R**

      **AND NOW**, this 4th day of January, 2019, the order of the Court of Common Pleas of Chester County is **AFFIRMED** upon the opinions of the Honorable Allison Bell Royer in <u>Interboro Packaging Corporation v. West Whiteland Township</u> (Dkt. No. 2014-02781-CT, filed August 28, 2017 and March 26, 2018) (C.P. Chester).

                              _____

                              ROBERT SIMPSON, Judge