**COMMONWEALTH of Pennsylvania**

v.

**Mark V. COSENTINO, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 2004.

Decided May 13, 2004.

Thomas R. Ceraso, Greensburg, for appellant.

Kyle M. Baxter, Greensburg, for appellee.

BEFORE: LEADBETTER, Judge and KELLEY, Senior Judge and FLAHERTY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Mark V. Cosentino appeals from the judgment of sentence entered in the Court of Common Pleas of Westmoreland County (trial court) based upon an adjudication of guilt for Cosentino's violation of Section 1833 of the Pennsylvania Election Code.[1] We affirm.

In 1989, Cosentino first registered to vote with the Westmoreland County Board of Elections[2] while living in his father's residence at 90 Wayne Avenue in the City of Lower Burrell. This address is in the City's Second Ward, First Precinct election district. The County Board of Elec-

---

1. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 3533. Section 1833 of the Code provides:

 Any person who votes or attempts to vote at any primary or election, knowing that he does not possess all the qualifications of an elector at such primary or election, as set forth in this act, shall be guilty of a misdemeanor of the first degree, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding ten thousand ($10,000) dollars, or to undergo an imprisonment of not more than five (5) years, or both, in the discretion of the court.

2. The registration application signed by Cosentino contained a declaration which stated the following, in pertinent part:

 *REGISTRATION DECLARATION:* I hereby declare that I am a citizen of the United States, that on the day of the next ensuing primary or election, I shall be at least eighteen years of age, and shall have resided in the Commonwealth of Pennsylvania and in the election district thirty days, that I am legally qualified to vote, that I affirm that the information provided herein is true and correct, and I fully understand that this application will be accepted for all purposes as the equivalent of an affidavit, and if it contains a material false statement, shall be subject to the same penalties for perjury as if I had been duly sworn.

 Commonwealth's Exhibit # 5.

tions issued a voter registration card to Cosentino indicating that he was a qualified elector in that election district. Cosentino subsequently married, and then moved to 113 Jamestown Manor which is also within the City's Second Ward, First Precinct.

In 1993, Cosentino and his wife moved to 4156 Frederick Drive, Allegheny Township, Westmoreland County, which is in the No. 1 Shearer's election district. In 1993 and 1996, Cosentino notified the Pennsylvania Department of Transportation (DOT) of his changes of the address.[3] In 1995, Cosentino submitted a change in his party affiliation to the County Board of Elections. In 1996, Mrs. Cosentino sub-

mitted a change of address to the County Board of Elections and voted in the Shearer's No. 1 election district. However, Cosentino has never changed his address of residence with the County Board of Elections since his initial registration. In addition, although Cosentino has moved his residence from Lower Burrell, he owns a number of commercial properties within the City as the sole shareholder of a corporation. As a result, Cosentino pays taxes to the City based on these properties.

On November 6, 2001, Cosentino entered the polling place for the City's Second Ward, First Precinct, signed the poll book[4], and voted in the general election.[5] The County Board of Elections was noti-

3. When Cosentino changed his address with DOT in 1996, the Pennsylvania Voter Registration Act (PVRA), Act of June 30, 1995, P.L. 170, *as amended*, 25 P.S. §§ 961.101—961.5109, had been enacted to ensure compliance with changes in voter registration procedures following the implementation of the National Voter Registration Act of 1993 (NVRA), P.L. 103–21, 42 U.S.C. §§ 1973gg–1—1973gg–10. At that time, Section 961.523 of the PVRA provided that a licensee could change the address of his voter registration at the time his address was changed for driver's license purposes. However, Section 961.523(a)(3) also provided that [a]ny change of address submitted to the Department of Transportation for the purposes of driver licensing shall serve as notification of change of address for voter registration for the registrant involved *unless the registrant indicates that the change of address is not for voter registration purposes*. (emphasis added). At trial, Cosentino testified that he could not remember whether or not he indicated a desire to change the address of his voter registration at that time. *See* Trial Transcript at 147–148. It should be noted that the former provisions of the PVRA have been repealed and replaced by the Act of January 31, 2002, P.L. 18, *as amended*, 25 Pa.C.S. §§ 701—3302.

4. The poll book signed by Cosentino stated his name and birth date, and indicated that his address was 90 Wayne Avenue, Lower Burrell and further stated, in pertinent part, that "[I]

hereby certify that I am qualified to vote in this election, and that I have not voted by absentee ballot." Commonwealth's Exhibit # 8.

5. Section 102(t) of the Election Code defines "qualified elector" as "[a]ny person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth, or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election." 25 P.S. § 2602(t). In turn, Section 701 of the Election Code provides, in pertinent part:

Every citizen of this Commonwealth eighteen years of age, possessing the following qualifications, shall be entitled to vote at all elections, provided he or she has complied with the provisions of the acts requiring and regulating the registration of electors:

* * *

(3) He or she shall have resided in the election district where he or she shall offer to vote at least thirty days immediately preceding the election, except that if qualified to vote in any election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she revoked his or her residence within thirty days preceding the election.

25 P.S. § 2811. *See also* Article 7, Section 1 of the Pennsylvania Constitution, PA. CONST.

fied that Cosentino had voted in the Second Ward, First Precinct election district and an investigation ensued.

On May 3, 2002, Cosentino was charged with violating Section 1833 of the Election Code. On August 1, 2002, following a preliminary hearing, the charge was held over to court.

On February 4, 2003, Cosentino waived his right to a trial by jury, and a non-jury trial was held before the trial court. At trial, Cosentino alleged that he held the honest, albeit mistaken, belief that he was lawfully qualified to vote in the Second Ward, First Precinct because he paid the majority of his taxes to the City. Cosentino also asserted that the "entrapment by estoppel" doctrine relieved him of criminal liability.[6] At the conclusion of the trial, the court adjudicated Cosentino guilty of

art. VII, § 1 ("[E]very citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact.... He or she shall have resided in the election district where he or she shall offer to vote at least sixty (60) days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within sixty (60) days preceding the election.").

In determining an elector's residence, Section 704 of the Election Code provides, in pertinent part:

In determining the residence of a person desiring to register or vote, the following rules shall be followed so far as they may be applicable:

(a) That place shall be considered the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning.

(b) A person shall not be considered to have lost his residence who leaves his home and goes into ... another election district of this State for temporary purposes only, with the intention of returning.

(c) A person shall not be considered to have gained a residence in any election district of this State into which he comes for temporary purposes only, without the intention of making such election district his permanent place of abode.

(d) The place where the family of a married man or woman resides shall be considered and held to be his or her place of residence, except where the husband and wife have actually separated and live apart, in which case the place where he or she has resided for two months or more shall be considered and held to be his or her place of residence.

25 P.S. § 2814(a)—(d).

Finally, with respect to the registration requirements in effect at the time Cosentino voted in the 2001 election, Section 961.501 of the PVRA provided, in pertinent part:

(a) **Eligibility.**—A qualified elector who will be at least 18 years of age on the day of the next election, who has been a citizen of the United States for at least one month prior to the next election and who has resided in this Commonwealth and the election district where the qualified elector offers to vote for at least 30 days prior to the next ensuing election ... shall be entitled to be registered as provided in this chapter. If an individual is qualified to vote in an election district prior to removal of residence, the individual may, if a resident of this Commonwealth, vote in the election district from which residence was removed within the 30 days preceding the election.

(b) **Effect.**—No individual shall be permitted to vote at any election unless the individual is registered under this subsection, except as provided by law or by order of a court of common pleas. No registered elector shall be required to register again for any election while the elector continues to reside at the same address.

**6.** As a basis for this assertion, counsel for Cosentino cited to *Commonwealth v. Bobbino*, 144 Pa.Super. 93, 18 A.2d 458 (1941). In *Bobbino*, the Defendant was unmarried and lived with his parents, brothers and sisters at 1002 South Jefferson Street, New Castle, Pennsylvania. This address was in the City's Eighth Ward, First election district. He accepted a position with the Commonwealth, and worked in Harrisburg from September 1, 1934 and through September 12, 1939, primary election day. However, the Defendant

the charge. On March 26, 2003, the trial court sentenced Cosentino to a six-month probationary term, the completion of 50 hours of community service, the payment of fees and costs, and disenfranchisement for a four-year period of time pursuant to Section 1852 of the Election Code.[7]

On April 1, 2003, Cosentino filed a motion for judgment of acquittal. On June 17, 2003, following a hearing on the motion, the trial court issued an order and opinion denying Cosentino's motion. Cosentino then filed the instant appeal.[8],[9]

In this appeal, Cosentino claims: (1) there is insufficient evidence to support his conviction; (2) his conviction is against the weight of the evidence; and (3) the trial court erred in its application of the "entrapment by estoppel" doctrine.

■ Cosentino first claims that there is insufficient evidence to support the instant

---

continued to be registered as a qualified elector in the City's Eighth Ward, First election district. The Defendant received a letter from his mother that the family had moved on August 28, 1939 to a house in the City's Fourth Ward, Sixth election district.

After learning of the family's move, the Defendant consulted with the Chief of the Commonwealth's Election Bureau, the Assistant Chief, and the Deputy Secretary of the Commonwealth. These officials advised the Defendant that he had not lost his right to vote in the City's Eighth Ward, First election district due to his family's move. As a result, on September 12, 1939, the Defendant presented himself at the poll for the Eighth Ward, First election district, signed a certificate stating that his address was 1002 South Jefferson Street, and voted in the primary election.

On October 7, 1939, the Registration Commission for Lawrence County received a card from the Defendant notifying the Commission that he had moved from his last residence to the new house in the City's Fourth Ward, Sixth election district. On the card, over his signature, the Defendant indicated that he had moved from his former residence on August 28, 1939, about two weeks preceding the primary election. Based on this information, the Defendant was charged with violating Section 3353 of the Election Code, tried on the charge, convicted and sentenced.

In reversing and remanding for a new trial, based on a faulty jury instruction, the Superior Court stated the following, in pertinent part:

[I]n order to convict a party, under this statute, which is extremely liberal in this respect, it is necessary to prove, not only that the party had no right to vote, but that he knew it. As this qualification depends upon domicil, and that is often a complicated question of law and fact, we have no doubt, that if the voter, in good faith, and with an honest purpose to ascertain the right, shall make a true statement of the facts of his case to a professional man, or any other man of skill and experience, capable of advising him correctly, the evidence of such advice, and the facts upon which it was taken, are competent, as bearing upon the question whether he knew that he had not a right to vote.

*Bobbino*, 18 A.2d at 460 (citation omitted).

7. Section 1852 of the Election Code provides, in pertinent part, that "[a]ny person convicted of the willful violation of any provision of this act shall, in addition to any of the penalties herein provided for, be deprived of the right of suffrage absolutely for a term of four years from the date of his conviction...." 25 P.S. § 3552.

8. Cosentino initially filed his appeal to the Pennsylvania Superior Court. However, by *per curiam* order dated August 6, 2003, the Superior Court transferred the appeal to this Court.

9. This Court's standard of review of a nonjury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether the trial judge committed error in the application of law. *Commonwealth v. Decker*, 698 A.2d 99 (Pa.Super.1997), *petition for allowance of appeal denied*, 550 Pa. 698, 705 A.2d 1304 (1998). As a reviewing court, this Court may not reweigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Vetrini*, 734 A.2d 404 (Pa.Super.1999). Furthermore, the fact-finder is free to believe all, part or none of the evidence presented. *Id.*

conviction.[10] In particular, Cosentino claims that a plain reading of Section 1833 of the Election Code shows that the Commonwealth must prove the following elements beyond a reasonable doubt: (1) the defendant voted or attempted to vote at any primary or election; and (2) the defendant knew that he did not possess all of the qualifications of an elector at such primary or election. Cosentino asserts that, in this case, the Commonwealth's evidence fails to show the required element of the offense that he knew that he was not qualified as an elector to vote in the City's Second Ward, First Precinct on November 6, 2001.

As noted above, Section 1833 of the Election Code provides, in pertinent part, that "[a]ny person who votes ... at any ... election, knowing that he does not possess all the qualifications of an elector at such ... election, as set forth in this act, shall be guilty of a misdemeanor of the first degree...." 25 P.S. § 3533. Thus, Cosentino is correct in asserting that an element of the instant offense, required to be demonstrated by the Commonwealth beyond a reasonable doubt, was his knowl-

edge that he was not a "qualified elector" as he certified when he voted in the City's Second Ward, First Precinct, on November 6, 2001. *See, e.g., Commonwealth v. Scolieri,* 571 Pa. 658, 813 A.2d 672 (2002) (The inclusion of "knowingly" and "intentionally" in a criminal statute indicates a legislative intent to include those *mens rea* requirements as necessary elements of the offense.); *Commonwealth v. Sanico, Inc.,* 830 A.2d 621 (Pa.Cmwlth.2003) (The inclusion of words such as "knowingly", "willfully" and "intentionally" in statutes defining criminal offenses indicates a legislative intent to require the inclusion of those *mens rea* requirements as necessary ingredients of the offenses proscribed by those statutes.).[11]

 It is well settled that as *mens rea,* or intent, is a subjective frame of mind, it is of necessity difficult of direct proof. *Commonwealth v. Roche,* 783 A.2d 766 (Pa.Super.2001), *petition for allowance of appeal denied,* 568 Pa. 736, 798 A.2d 1289 (2002). On review, this Court must look to all of the evidence establishing intent including, but not limited to, the defendant's conduct as it appeared to his

**10.** A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. *Commonwealth v. Weston,* 561 Pa. 199, 749 A.2d 458 (2000). The appropriate standard of review regarding the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses beyond a reasonable doubt. *Commonwealth v. DeJesus,* 567 Pa. 415, 787 A.2d 394, 398 (2001), *cert. denied,* 537 U.S. 1028, 123 S.Ct. 580, 154 L.Ed.2d 441 (2002); *Commonwealth v. Beck,* 810 A.2d 736 (Pa.Cmwlth.2002).

**11.** *See also Commonwealth v. Fine,* 166 Pa.Super. 109, 70 A.2d 677, 680 (1950) ("[I]t may be inferred that it was the legislative intent not to require such guilty knowledge, if we apply the canon of construction suggested

in *Com. v. Jackson,* [146 Pa.Super 328. 22 A.2d 299, 301 (1941), *aff'd per curiam,* 345 Pa. 456, 28 A.2d 894 (1942)] in which referring to the Milk Control Act, 31 P.S. § 700j–101 *et seq.,* Judge Hirt stated: 'Other sections of the act, imposing other duties * * * specifically provide that proof of guilty knowledge or intent *is* essential to impose liability for failure to perform them', and after pointing out that the requirement of knowledge was not set out in the section under consideration, he stated: *'The omission is significant'.* (Italics supplied). What was said in the *Jackson* case is applicable here since other sections of the Election Code e.g., sections 1812, 1813, 1833, 1834, 25 P.S. § 3512, 3513, 3533, 3534—require guilty knowledge. We conclude, therefore, that it was the legislative intention not to require a guilty knowledge ... as a condition precedent to guilt under section 1830 [of the Election Code].....").

eyes. *Id.* Intent can be proven by direct or circumstantial evidence, and it may be inferred from acts or conduct or from the attendant circumstances. *Id.*

In the opinion filed in support of its order denying Cosentino's motion for judgment of acquittal, the trial court outlined the evidence upon which it relied in convicting Cosentino stating, in pertinent part:

> In the present case, the court based its finding of [Cosentino]'s guilt upon his commission of the knowing act of signing the poll book before voting on November 6, 2001.... [Cosentino] filled out a registration declaration in 1989 which enumerated the qualifications an elector must possess before presenting himself to vote. One of the stated qualifications was that the voter shall have resided in the election district in which he was registered for thirty days prior to the election. The declaration further stated that "I fully understand that this application will be accepted for all purposes as the equivalent of an affidavit ..." Trial Transcript, 59. The signing of this affidavit evidences the fact that [Cosentino] was made aware of the qualifications a voter must possess. The back of the voter identification card also contains a disclaimer stating that "your voter identification card relates only to the time of issuance thereof, and it is not of itself evidence or proof of your qualifications to vote at any primary or election ... To safeguard your right to vote, notify this office when there is a change in your address." Trial Transcript, 56. This further illustrates the fact that [Cosentino] should have been aware of the residence requirement.
>
> The issue for the court to determine in this case was whether [Cosentino] knew that he did not reside within Ward

Two, First Precinct of the election district of [the City]. By his own admission, [Cosentino] resided within Allegheny Township on November 6, 2001, and not within [the City]. His act of falsely verifying his father's [City] address in the poll book was a knowing act which proved beyond a reasonable doubt that he voted in a district in which he knew he did not reside....

Trial Court Opinion at 5.

As noted by the trial court, and as noted above, the Commonwealth introduced at trial the voter registration form signed by Cosentino, and submitted to the Board of Elections, which contains a registration declaration stating, in pertinent part, that "[I] shall be at least eighteen years of age, and *shall have resided in the Commonwealth of Pennsylvania and in the election district thirty days,* that I am legally qualified to vote ..." Commonwealth's Exhibit # 4 (emphasis added). Thus, the record demonstrates that Cosentino was aware of the qualifications of electors as outlined in Section 701 of the Election Code, 25 P.S. § 2811.

In addition, the Commonwealth introduced at trial the page from the poll book signed by Cosentino on November 6, 2001 at the polling place in the City's Second Ward, First Precinct which stated his name and birth date, indicated that his address was at his parents' residence at 90 Wayne Avenue in the City, and further stated that "[*I* ] *hereby certify that I am qualified to vote in this election,* and that I have not voted by absentee ballot." Commonwealth's Exhibit # 8 (emphasis added). Moreover, Cosentino frankly admitted that he had not lived at his parents' residence since 1991, and that he had not lived in the City since 1993. *See* Trial Transcript at 135, 137.[12]

---

**12.** It should also be noted that Cosentino possessed the requisite knowledge to notify DOT

For purposes of our review, when the evidence admitted at trial and all reasonable inferences drawn therefrom are viewed in the light most favorable to the Commonwealth, it is clear that the foregoing required element of the instant offense was established beyond a reasonable doubt. In short, the trial court did not err in convicting Cosentino for his violation of Section 1833 of the Election Code, and Cosentino's allegation of error in this regard is without merit.[13]

Cosentino next claims that the verdict is against the weight of the evidence.[14] In particular, Cosentino claims that even if there is sufficient evidence to support the instant conviction, the trial court should have granted a new trial based on the weight of the evidence. The trial court's verdict of guilt, in the absence of any direct evidence that Cosentino knew that he was not qualified as an elector to vote in the City, is sufficient to shock the conscience and is most certainly against the weight of the evidence.

However, as noted above, intent can be proven by either direct or circumstantial evidence, and it may be inferred from acts or conduct or from the attendant circumstances. *Roche.* Thus, it was entirely proper to infer the required *mens rea* from the evidence admitted at trial in this case. Moreover, in light of the evidence outlined above supporting Cosentino's con-

---

to change the address on his driver's license to his home address in Allegheny Township, and to notify the Board of Elections in 1995 to change his party affiliation from independent to democrat. *See* Trial Transcript at 134–135, 137–138, 144–145; Commonwealth's Exhibit # 4.

**13.** *See, e.g., Commonwealth v. Bidner,* 282 Pa.Super. 100, 422 A.2d 847, 852 (1980) ("[C]learly, the giving of a false address on a Voter's Certificate in an attempt to vote constitutes illegal voting. *See,* [*Bobbino* ] (prosecution under 25 P.S. § 3533 for signing false address on voter's certificate)."). *See also United States v. Cianciulli,* 482 F.Supp. 585, 623 (E.D.Pa.1979) ("[T]he law is clear that a person must be legally registered in order to vote. 25 P.S. § 2811. It is also clear that a person must have some factual connection or nexus with the address from which (s)he registers to vote. 25 P.S. § 2814. One basic principle particularly pertinent here is that a person cannot register from a residence with which (s)he has no nexus whatsoever. For example, defendant Fiorentino registered from 1433 South 6th Street, 3rd floor, using the 1975 voter registration form. However, before trial, he admitted to the federal grand jury that he had never lived at that address. (N.T. 4–217.) Therefore, the jury found under Pennsylvania law that defendant Fiorentino could not claim he was a resident of an address at which he had no factual nexus whatsoever. He attested, as did all registrants, on

the 1975 registration form that he was 'legally qualified to vote', thus, in effect swearing that, under Pennsylvania law, the registration was legally proper. Therefore, the jury was unquestionably entitled to find that defendant Fiorentino did not act inadvertently, by mistake or accident or by mistake of law, but acted 'knowingly or willfully' in providing a false address with which to register to vote[ in violation of 42 U.S.C. § 1973i(c) prohibiting the provision of false information in registering or voting].").

**14.** An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745 (2000). Appellate review of a weight of the evidence claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Id.* A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. *Id.* Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. *Id.* In order to grant a new trial based on a weight of the evidence claim, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court. *Commonwealth v. La,* 433 Pa.Super. 432, 640 A.2d 1336, *petition for allowance of appeal denied,* 540 Pa. 597, 655 A.2d 986 (1994).

viction, it is clear that the trial court did not abuse its discretion in determining that the instant conviction did not shock the conscience of the court. *Widmer; La.*

█ Finally, Cosentino claims that the trial court erred in its application of the "entrapment by estoppel" doctrine. In particular, Cosentino contends that *Bobbino* holds that a lack of knowledge, as reflected by the evidence in this case, does furnish an appropriate excuse since knowledge is an essential element of the offense contained in Section 1833 of the Election Code. Thus, the trial court improperly relied on the declaration that he made at the time he voted as an indication that he had knowledge of the election laws. He directly testified that he had no such knowledge, and that he had an honest and reasonable belief that he was qualified to vote in the City's Second Ward, First Precinct election district on November 6, 2001. This lack of knowledge, which is an essential element of the crime charged, is left unsatisfied and unproven in this case.

With respect to the application of the "entrapment by estoppel" doctrine, or "reliance doctrine", the Pennsylvania Supreme Court has recently considered its application within the context of a criminal prosecution in *Commonwealth v. Kratsas*, 564 Pa. 36, 764 A.2d 20 (2001).[15] Regard-

---

15. In *Kratsas*, the defendants had filed a pretrial motion to dismiss a criminal prosecution for gambling charges on due process grounds, alleging that local officials had acted in such a manner to convey the impression that conduct that the defendants had engaged in was, in fact, permissible. In examining the application of this doctrine, the Supreme Court stated the following, in pertinent part:

> The reliance doctrine has been described as a narrow exception to the maxim that ignorance of law is no excuse.... However, the availability of a reliance defense on such terms (independent of constitutional due process principles and constraints) is not so clear in Pennsylvania although the General Assembly adopted many provisions of the Model Penal Code in enacting the comprehensive Crimes Code, it declined to adopt Section 2.04(3)(b) or to effectuate any substantial equivalent. Indeed, the official commentary reflects the legislative intent that "[g]enerally speaking, ignorance or mistake of law is no defense." 18 Pa.C.S. § 304 (official comment). Although this Court would appear to have substantially endorsed a reliance defense in [the context of] overturning a contempt conviction[,] criminal contempt is a unique area of the law, and it is thus questionable how broadly the Court's analysis ... should be read....
>
> Likewise, it is questionable whether, and to what extent, the reliance doctrine is relevant to substantive elements of criminal offenses, in particular, the element of intent.... To the extent that such a course is not mandated by constitutional principles, however, in Pennsylvania, the enactments and intentions of the General Assembly must play a central role in evaluating its wisdom. In this regard, the legislative admonition that, "[g]enerally speaking, ignorance or mistake of law is no defense", 18 Pa.C.S. § 304 (official comment), is, again, highly relevant.
>
> Although the invocation of a reliance defense in the trial setting thus raises substantial and complex questions, our present review concerns a pre-trial motion to dismiss and thus implicates a narrower range of issues. In this respect, we have no doubt that the due process provisions of the United States and Pennsylvania constitutions, at least in a narrow set of unique and compelling circumstances, would serve both as an exception to the maxim that mistake of law is no defense, and ultimately to foreclose a criminal prosecution. Therefore, where an adequate claim of such circumstances is presented in the form of a pre-trial motion to dismiss, it is incumbent upon the trial courts to determine the doctrine's applicability and effect.... Thus, our disposition of this case need not rest, as the Commonwealth's arguments intend, upon the relevance (or irrelevance) of a reliance defense before a jury. Further, additional consideration of the availability of reliance as an affirmative defense, and its relationship to substantive elements of gambling crimes, is unnecessary at this juncture....

*Kratsas*, 564 Pa. at 53–57, 764 A.2d at 29–31 (citations and footnotes omitted). Thus, in

ing the elements that must be shown to successfully invoke the reliance doctrine as a defense, the Supreme Court stated the following:

First, in order to support invocation of the doctrine, most jurisdictions require that there be an affirmative representation that certain conduct is legal. It is frequently observed that mere laxity in law enforcement will not satisfy this condition, nor will vague or contradictory messages. Second, the representation should be made by an official or a body charged by law with responsibility for defining permissible conduct respecting the offense at issue. Third, actual reliance upon the official's statements should be present, which condition has also been stated as a requirement that the defendant believe the official. Finally, the view is commonly held that reliance must be in good faith and reasonable given the identity of the government official, the point of law represented, and the substance of the statement. Courts generally impose the burden upon the defendant to satisfy all elements.

*Kratsas* at 59, 764 A.2d at 32–33 (citations and footnotes omitted).[16]

Thus, even if it is assumed that Cosentino could have invoked the "reliance doc-

trine" as an affirmative defense to the instant charge at trial, it is clear that he did not demonstrate the requisite elements supporting such a defense. *Id.* As the trial court noted, there is absolutely no evidence which indicates that any public official made any affirmative representation to Cosentino that he could continue to vote in the City's Second Ward, First Precinct election district after he had changed his residence to Allegheny Township. As a result, and contrary to Cosentino's assertion, the trial court did not err in this case in its application of the "reliance doctrine" as outlined in *Bobbino*.[17]

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 13th day of May, 2004, the judgment of sentence entered in the Court of Common Pleas of Westmoreland County, dated March 26, 2003 at No. 3172 C 2002, is AFFIRMED.

---

*Kratsas*, the Supreme Court did not definitively address the availability of the "reliance doctrine" as an affirmative defense to criminal charges at trial.

**16.** *See also United States v. West Indies Transport, Inc.*, 127 F.3d 299, 313 (3rd Cir.1997), *cert. denied*, 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 644 (1998) ("[W]e hold that the entrapment by estoppel defense applies where the defendant establishes by a preponderance of the evidence that (1) a government official (2) told the defendant that certain criminal conduct was legal, (3) the defendant actually relied on the government official's statements, (4) and the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law rep-

resented, and the substance of the official's statement.") (footnote omitted).

**17.** *See, e.g., West Indies Transport, Inc.*, 127 F.3d at 313 ("[A]s the district court correctly observed, defendants pointed to no evidence tending to prove that the INS was informed of and approved defendants' scheme to employ alien workers admitted to the United States on D–1 foreign crew visas as permanent dockhands. Defendants have failed to establish a necessary element of the defense—that government officials told them that their conduct was lawful. For that reason, the district court correctly excluded the proffered evidence.").