IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 155 C.D. 2022 |
| | : | Argued: December 12, 2022 |
| Eugene P. Stilp, | : | |
| | : | |
| Appellant | : | |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                     FILED: October 5, 2023


Eugene P. Stilp (Stilp) appeals the judgment of sentence imposed in the Court of Common Pleas of the 17th Judicial District, Union County Branch (trial court) on his conviction for violating Section 125-2(A) of Lewisburg Borough's (Borough) Open Burning Ordinance (Ordinance).[1]  We affirm.

---

[1] Section 125-2(A) of the Ordinance states:

> It shall be unlawful for any person to cause, suffer, or allow the open[-]fire burning of any refuse [or] rubbish . . . from which the products of combustion are discharged into the open air.

In turn, Section 125-1 defines "refuse" as "[a]ll putrescible and nonputrescible solid wastes such as . . . petroleum products . . . whether new or used . . . ."  Additionally, Section 125-1 defines "rubbish" as "[a]ll nonputrescible solid wastes, such as . . . cardboard [or] paper . . . and similar material."  *See also* Section 1202(5) of the Borough Code, 8 Pa. C.S. §1202(5) ("The specific
**(Footnote continued on next page…)**

## I.

The facts as found by the trial court were summarized as follows:

> On March 12, 2020, Officer Daniel Baumwoll of the Buffalo Valley Regional Police Department [(Officer Baumwoll)] cited [Stilp] for violating the [Borough's Ordinance], specifically [S]ection 125-2. It is undisputed that [Stilp] appeared at the Union County Courthouse with a steel trash can and fire extinguisher, ignited newspaper and a flag, and was cited by [Officer Baumwoll]. Officer Baumwoll warned [Stilp] of the [Ordinance] prior to [Stilp's] actions. Officer Baumwoll testified that products of combustion were discharged into open air. [Stilp] argues that his action of burning a flag [bearing the then-

---

powers of the borough shall include . . . [t]o make regulations as may be necessary for the health, safety, morals, general welfare and cleanliness and beauty, convenience, comfort and safety of the borough."); Section 1202(11) of the Borough Code, 8 Pa. C.S. §1202(11) ("The specific powers of the borough shall include . . . [t]o regulate the emission of smoke from chimneys, smokestacks and other sources to the extent the regulation is not otherwise prohibited by applicable Federal or State law."); and Section 1202(17)(iv) of the Borough Code, 8 Pa. C.S. §1202(17)(iv) ("The specific powers of the borough shall include . . . [t]o impose, by ordinance, other safeguards concerning inflammable articles as may be necessary.").

Moreover, Section 125-3 of the Ordinance outlines the exceptions and exemptions to the provisions of Section 125-2(A), stating:

> This chapter shall not apply to open fires, barbecues or other domestic open combustion areas used solely for the cooking of consumable foods, nor to any training activities of the [Borough's] Fire Companies or Buffalo Valley Regional Police Department, or to other organizations dedicated to the public good, where open fires or incineration shall be an integral part of their training or effective purposes.

*See also generally* Section 6107(a) of the Judicial Code, 42 Pa. C.S. §6107(a) ("The ordinances of municipal corporations of this Commonwealth shall be judicially noticed."); the Comment to Pa.R.E. 201 ("In determining the law applicable to a matter, the judge is sometimes said to take judicial notice of law. In Pennsylvania, judicial notice of law has been regulated by decisional law, statute, and rule. *See* . . . [Section 6107 of the Judicial Code,] 42 Pa. C.S. §6107 (judicial notice of municipal ordinances). . . .").

2

> president's name] w[as] a form of political protest and
> protected by the First Amendment[, U.S. Const. amend. I].
> [Stilp] argues that the [Ordinance] is unconstitutional on
> its face and as applied.

Reproduced Record (RR) at 98a-99a (citation omitted). In relevant part, the Citation stated that Stilp "did open[-fire] burn a combustible material in a metal can on a public sidewalk. Products of combustion were released into the open air." *Id.* at 2a.

Stilp appealed the Citation, and a hearing was conducted before a Magisterial District Judge (MDJ) on November 20, 2020, at which Stilp did not appear. *See* Docket No. MJ-17301-NT-00000777-2020 (MDJ Docket) at 3. The MDJ convicted Stilp of the offense and imposed a $1.00 fine and court costs. *Id.* at 3, 5. Stilp appealed his conviction to the trial court.

On May 6, 2021, the trial court conducted a hearing on Stilp's *de novo* summary appeal. *See* RR at 7a-78a. Both Officer Baumwoll and Stilp testified at the hearing. *See id.* at 11a-19a, 38a-61a. Ultimately, the trial court convicted Stilp of violating the Ordinance, stating, in pertinent part:

> The [c]ourt finds the Commonwealth has met it[s] burden to prove beyond a reasonable doubt [Stilp] has violated Section 125-2 of the [Ordinance]. Officer Baumwoll testified and the [c]ourt finds that, in addition to burning a flag, [Stilp] burned newspaper in an open fire in the Borough. Officer Baumwoll testified and the [c]ourt finds that products of combustion were discharged into the open air. Paper is clearly in the definition of "Rubbish" contained in the Ordinance. No argument was offered raising any First Amendment concerns with [Stilp's] action in burning the newspaper.
>
> Additionally, [Stilp's] argument that he did not violate the [Ordinance] because his numerous anti-Trump protests were carried out by an "organization dedicated to the public good[," as provided in Section 125-3,] fails. . . .

3

> Regardless of [Stilp's] status as an "organization dedicated to the public good," there is no evidence of record that the burning of newspaper was an integral part of such organization's training or effective purpose. The [c]ourt finds [Stilp] guilty of a violation of the [Ordinance,] specifically [S]ection 125-2. The [c]ourt having found [Stilp] guilty of violating Section 125-2 for his burning of paper, declines to make any finding regarding [Stilp's] burning of the flag.

RR at 100a-01a. On January 21, 2022, at a sentencing hearing, the trial court sentenced Stilp to pay a $100.00 fine and court costs on his conviction. *See id.* at 104a. Stilp then filed the instant timely appeal of the judgment of sentence.[2, 3]

---

[2] As this Court has explained:

> This Court's review of a nonjury trial is limited to determin[ing] whether the findings of the trial court are supported by competent evidence, and whether the trial judge committed error in the application of law. *Commonwealth v. Hoffman*, 938 A.2d 1157[, 1160 n.10] (Pa. Cmwlth. 2007). As a reviewing court, this Court may not reweigh the evidence or substitute our judgment for that of the factfinder. *Id.* Furthermore, the factfinder is free to believe all, part or none of the evidence presented. *Id.* In addition, a challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. *Commonwealth v. Cosentino*, 850 A.2d 58[, 63 n.10] (Pa. Cmwlth. 2004). Our review of a sufficiency of the evidence claim is limited to determining whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offense beyond a reasonable doubt. *Id.*

*Commonwealth v. Parente*, 956 A.2d 1065, 1068 n.8 (Pa. Cmwlth. 2008). In addition, as a final matter, "[i]t is well settled that, in general, ordinances are presumed to be constitutional, and a heavy burden is placed on those seeking to prove its unconstitutionality." *Id.* at 1070 (citation omitted).

[3] In the interest of clarity, we reorder Stilp's appellate claims.

**II.**

On appeal, Stilp claims: (1) the trial court erred in determining that the Commonwealth carried its First Amendment burden of establishing that the Section 125-3 exemption for "organizations dedicated to the public good" satisfies "strict scrutiny";[4] (2) the trial court erred in determining that the Commonwealth carried its First Amendment burden of establishing that the Section 125-3 exemption for "organizations dedicated to the public good" satisfies "intermediate scrutiny"; and (3) the trial court erred in determining that Ordinance Section 125-2(A) is not unconstitutionally vague, fails the rule of lenity, and does not inculpate Stilp because he fits within the Section 125-3 exemption for "other organizations dedicated to the public good, where open fires or incineration shall be an integral part of their . . . effective purposes." We do not agree.

**III.**

With respect to Stilp's First Amendment claims, in general, "[t]he guarantees of the First Amendment have never meant 'that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.'" *Greer v. Spock*, 424 U.S. 828, 836 (1976). In evaluating Stilp's claims herein, the Pennsylvania Supreme Court has recently analyzed the level of scrutiny applied to restraints on protected speech:

> Restrictions on the time, place and manner of expression, whether oral, written or symbolized by conduct, are a form of a content-neutral regulation of

---

[4] The First Amendment to the United States Constitution provides, in relevant part, that "[C]ongress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. The Free Speech Clause of the First Amendment is applicable to the states through the Fourteenth Amendment, U.S. Const. amend. XIV. *In re Condemnation by the Urban Redevelopment Authority of Pittsburgh*, 913 A.2d 178, 183 (Pa. 2006).

5

speech. These restrictions may make it more difficult for an individual to engage in a desired speech-related activity by targeting, *inter alia*, the means of speech or the method of communication, but they do not target the content of the message ultimately conveyed. Time, place, and manner restrictions are valid, provided that they: (1) are justified without reference to the content of the regulated speech; (2) are narrowly tailored to serve a significant governmental interest unrelated to speech; and (3) leave open ample alternative channels for communication of the information.

The [United States Supreme] Court has explained that "[t]he principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." The government's purpose of the speech restriction is the controlling consideration and, if the purpose is unrelated to the expression of content, the restriction is deemed neutral, even though the speech restriction may have an incidental effect on some speakers or messages, but not others.

*S.B. v. S.S.*, 243 A.3d 90, 105-06 (Pa. 2020), *cert. denied*, 142 S. Ct. 313 (2021) (citations and footnote omitted).[5]

Indeed, as that Court has acknowledged, a time, place, or manner regulation "is constitutionally permissible if reasonable and in furtherance of a

---

[5] As our Supreme Court explained:

While the precise text of the two constitutional standards differ (*i.e.*, the [*United States v. O'Brien*, 391 U.S. 367, 377 (1968),] standard employed to determine whether a regulation of speech is content neutral and the specific standard applicable to time, place, and manner restrictions on speech), the High Court has clarified that the *O'Brien* standard "is little, if any, different from the standard applied to time, place, or manner restrictions." [*Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 298 (1984)].

*S.B.*, 243 A.3d at 106.

substantial governmental interest." *Brush v. Pennsylvania State University*, 414 A.2d 48, 53 (Pa. 1980) (citations omitted). "Moreover, [t]he state, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.* at 53 n.8 (citing *Greer*, 424 U.S. at 836).

As outlined above, Stilp was convicted herein for violating Section 125-2(A) of the Borough's Ordinance by burning newspaper midday on the courthouse steps, and not for engaging any protected speech. Stilp's first claim that the Ordinance is facially unconstitutional is meritless because, as the Pennsylvania Supreme Court has acknowledged, "we are convinced that there are narrow categories of flag desecration constitutionally punishable under [Section 2102 of the Pennsylvania Crimes Code, 18 Pa. C.S. §2102,[6] prohibiting the desecration of the state or national flag]." *Commonwealth v. Bricker*, 666 A.2d 257, 263 (Pa. 1995).[7] Likewise, there are many instances of burning ordinary "refuse" or "rubbish" that do not fall within the ambit of the First Amendment's constitutional protections because "[w]here there is no expression of ideas, there is no protection." *Id.* As a result, the provisions of Section 125 of the Borough's Ordinance are not facially unconstitutional. *See, e.g.*, *Bricker*, 666 A.2d at 263 ("[W]e are convinced that there are narrow categories of flag desecration constitutionally punishable under Section

---

[6] Section 2102(a)(4) states: "A person is guilty of a misdemeanor of the third degree if, in any manner, he . . . publicly or privately mutilates, defaces, defiles, or tramples upon, or casts contempt in any manner upon any flag." 18 Pa. C.S. §2102(a)(4). However, Section 2102(b)(4) provides: "Subsection (a) of this [S]ection does not apply . . . [t]o any patriotic or political demonstration or decorations." 18 Pa. C.S. §2102(b)(4).

[7] *See also* 666 at 263 ("[T]he United States Supreme Court has suggested that a person might be punished for commercial exploitation of the flag, *see* [*United States v. Eichman*, 496 U.S. 310, 315 n.4 (1990)], and desecrating a publicly owned flag, *see id.* at 316 n.5[.]").

7

2102. Accordingly, we refuse to find our flag desecration statute facially unconstitutional.").

In addition, Stilp's as-applied constitutional challenge is also meritless. Initially, with respect to the first enumerated *S.B.* criterion, it must be noted that, as outlined above, Section 1202 of the Borough Code specifically empowers the Borough to enact Section 125-2(A) of the Ordinance for the general health, safety, and welfare, and to reduce noxious emissions into the air. *See, e.g.*, *City of Erie v. Pap's A.M.*, 529 U.S. 277, 296 (2000) ("The first factor of the *O'Brien* test is whether the government regulation is within the constitutional power of the government to enact. Here, [the city's] efforts to protect public health and safety are clearly within the city's police powers."). Because the Borough is specifically empowered to enact legislation in these areas, it was within its constitutional and statutory authority to enact Section 125-2(A) of the Ordinance.

Thus, the instant case may be distinguished from *Bricker*, and all of the other state and federal precedent regarding flag desecration statutes and ordinances, because Section 125-2 of the Ordinance herein does not prohibit the burning of any flag in particular, but generally prohibits "the open[-]fire burning of any refuse [or] rubbish . . . from which the products of combustion are discharged into the open air." It is undisputed that Stilp ignited both newspaper and a flag in his demonstration, and that the newspaper may be considered as "rubbish," which is defined in Section 125-1 as "[a]ll nonputrescible solid wastes, such as . . . cardboard [or] paper . . . and similar material."

Regarding the second *S.B.* criterion, as the United States Supreme Court has explained:

> [In *O'Brien*,] O'Brien burned his draft registration card as
> a public statement of his antiwar views, and he was

8

convicted under a statute making it a crime to knowingly mutilate or destroy such a card. This Court rejected his claim that the statute violated his First Amendment rights, reasoning that the law punished him for the "noncommunicative impact of his conduct, and for nothing else." 391 U.S.[] at 382[.] In other words, the Government regulation prohibiting the destruction of draft cards was aimed at maintaining the integrity of the Selective Service System and not at suppressing the message of draft resistance that O'Brien sought to convey by burning his draft card. So too here, the ordinance prohibiting public nudity is aimed at combating crime and other negative secondary effects caused by the presence of adult entertainment establishments . . . and not at suppressing the erotic message conveyed by this type of nude dancing. Put another way, the ordinance does not attempt to regulate the primary effects of the expression, *i.e.*, the effect on the audience of watching nude erotic dancing, but rather the secondary effects, such as the impacts on public health, safety, and welfare. . . .

*City of Erie*, 529 U.S. at 291.

Likewise, in the instant matter, Section 125-2(A) of the Borough's Ordinance is specifically aimed at preventing the discharge of the noxious products of combustion into the open air, and not at all by suppressing the primary political message that Stilp sought to convey through his prohibited conduct. Again, Stilp was not prosecuted because a flag was destroyed; rather, he was prosecuted for burning "rubbish" and the political flag "from which the products of combustion [we]re discharged into the open air" in violation of Section 125-1 of the Ordinance.[8] As a result, his violation of Section 125 of the Ordinance solely and exclusively

---

[8] The question of whether or not the political flag may be considered to be either "refuse" or "rubbish" under the relevant provisions of Section 125 of the Ordinance is not necessary to our analysis because, as indicated above, Stilp was only convicted of burning the newspaper as "rubbish" in violation of the Ordinance.

9

"punished him for the 'noncommunicative impact of his conduct, and for nothing else.' [*O'Brien*,] 391 U.S.[] at 382[.]" *City of Erie*, 529 U.S. at 291.

Moreover, as outlined above, Section 125-2(A) specifically prohibits "the open[-]fire burning of any refuse [or] rubbish . . . from which the products of combustion are discharged into the open air." Thus, the Ordinance is "narrowly tailored to serve th[is] significant governmental interest unrelated to speech." *S.B.*, 243 A.3d at 105.[9]

Lastly, with regard to the final *S.B.* criterion, Section 125-2(A) of the Borough's Ordinance leaves open a multitude of other channels for Stilp to communicate his message. Specifically, Section 125-2(A) only prohibits the burning of the flag and the newspaper. Stilp could have mutilated and/or destroyed the flag by any other permitted means, or used any other appropriate expressive methods to convey the same message. *See, e.g.*, *Kovacs v. Cooper*, 336 U.S. 77, 87-88 (1949) ("Section 4 of the ordinance bars sound trucks from broadcasting in a loud and raucous manner on the streets. There is no restriction upon communication of ideas or discussion of issues by the human voice, by newspapers, by pamphlets, by dodgers. We think that the need for reasonable protection in the homes or business houses from the distracting noises of vehicles equipped with such sound amplifying devices justifies the ordinance.") (footnotes omitted); *Spriggs v. South Strabane Township Zoning Hearing Board*, 786 A.2d 333, 336 (Pa. Cmwlth. 2001) ("[F]inally, the [o]rdinance leaves open alternative means for appellant to communicate his religious beliefs, such as conforming his sign to the size

---

[9] Nevertheless, as our Supreme Court stated: "The United States Supreme Court has clarified that 'a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests, but that it need not be the least restrictive or least intrusive means of doing so.'" *S.B.*, 243 A.3d at 105 n.12 (citation omitted).

requirements of the [o]rdinance for his [zoning] district, or, as the [b]oard noted, attempting to declare his religious beliefs on a sign of this size in an I-2 district. . . ."); *State v. Cornwell*, 776 N.E.2d 572, 580 (Oh. Ct. App. 2002) ("[The ordinance] is not a complete ban on playing music from automobiles. It permits music to be played at any volume that does not disturb the peace of others, *i.e.*, that does not cause or tend to incite a breach of the peace. [The a]ppellant had ample opportunity to play music from his car, albeit at a volume lower than that which would cause a disturbance of the peace. Furthermore, in respect to [the ordinance, the] appellant made no attempt to show that any of the alternative avenues of communication were inadequate.") (citation omitted).[10] As a result, Stilp's claims

---

[10] Furthermore, as the Superior Court has stated:

> The value to an open society derived from the free flow of ideas is self-evident. For that reason courts have been loath to sanction any measure which infringes upon a person's right to communicate his ideas. Pure speech therefore is a right which is to be zealously preserved in our society. However, as a person's activities move away from pure speech and into the area of expressive conduct they require less constitutional protection. As the mode of expression moves from the printed page or from pure speech to the commission of public acts the scope of permissible regulation of such expression increases. *See* [*O'Brien*]; *Commonwealth v. Winkleman*, [326 A.2d 496 (Pa. Super. 1974)]. It should be noted that in our case the very purpose of the court order was not to limit the expression of the ideas appellants were attempting to communicate[,] but was to limit the conduct by which the appellants chose to communicate their ideas. It is apparent that in a highly technological, civilized society a person or group of persons cannot justify participation in any type of conduct, without any limits at all, merely because they allege that their conduct has a higher, symbolic purpose which, they allege, brings it within the ambit of protection afforded to free speech.

*Rouse Philadelphia Inc. v. Ad Hoc '78*, 417 A.2d 1248, 1254 (Pa. Super. 1979).

11

that Section 125 of the Ordinance violates the First Amendment, either facially or as applied to him herein, are without merit.

## IV.

Finally, Stilp claims that the Ordinance is unconstitutionally vague, violates the rule of lenity, and does not inculpate him because the exemption contained in Section 125-3 does not adequately define "organizations dedicated to the public good where open fires or incineration shall be an integral part of their training or effective purposes."  Specifically, Stilp cites Officer Baumwoll's testimony that this exemption was unclear and that the Officer believed that the Boy Scouts were likely within its scope.  *See* RR at 17a.  He also cites his own testimony that he was part of a group of protestors conducting anti-Trump protests in 24 Pennsylvania municipalities and that an integral part of the protests is the flag burning that served the public good as "a physical way of calling attention to the subject of the matter which was the nature of Donald Trump's belief system."  RR at 42a.

As this Court has stated:

> There is a strong presumption that legislative enactments are constitutional.  For that reason, a constitutional challenge can succeed only when the challenger demonstrates that the law clearly, plainly, and palpably violates the Pennsylvania Constitution.  The void-for-vagueness doctrine is grounded in procedural due process protections.  As explained by the Pennsylvania Supreme Court:
>
>> A law is void on its face if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application."  The void for vagueness doctrine incorporates the due process notions

12

of fair notice or warning. . . . [I]n reviewing a void for vagueness challenge, we must consider both the essential fairness of the law and the impracticability of drafting the legislation with greater specificity.

Although at first blush a law may appear vague on its face and those subject to it without fair notice, however, it may withstand a constitutional challenge if it has been narrowed by judicial interpretation, custom and usage. . . .

*Marcellus Shale Coalition v. Department of Environmental Protection*, 216 A.3d 448, 487-88 (Pa. Cmwlth. 2019) (citations omitted).

In turn, Section 1903 of the Statutory Construction Act of 1972 (Statutory Construction Act), states: "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; . . . General words shall be construed to take their meanings and be restricted by preceding particular words." 1 Pa. C.S. §1903. In addition, Section 1928(b)(1) states: "All provisions of a statute of the classes hereafter enumerated shall be strictly construed: [] Penal provisions." 1 Pa. C.S. §1928(b)(1).[11] Likewise, "[u]nder the rule of lenity, when a penal statute is ambiguous, it must be strictly construed in favor of the defendant." *Commonwealth v. Cousins*, 212 A.3d 34, 39 (Pa. 2019) (citation omitted). As the United States Supreme Court has recognized, the rule of lenity "is rooted in fundamental principles of due process which mandate

---

[11] "[W]e note that the principles and rules of statutory construction apply equally to the interpretation of statutes and to local laws. *Hamilton v. Unionville-Chadds Ford School District*, [714 A.2d 1012, 1014 (Pa. 1998)]." *Commonwealth v. Asamoah*, 809 A.2d 943, 945 (Pa. Super. 2002); *see also Wertz v. Chapman Township*, 709 A.2d 428, 433 n.8 (Pa. Cmwlth. 1998) ("This [C]ourt is not bound by the Superior Court's precedents although, where persuasive, we are free to adopt the Superior Court's reasoning.") (citations omitted).

13

that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Dunn v. United States*, 442 U.S. 100, 112 (1979) (citations omitted).

> However,
> the "simple existence of some statutory ambiguity . . . is not sufficient to warrant application of the rule of lenity, for most statutes are ambiguous to some degree." Rather, the rule only applies in those cases "in which a reasonable doubt persists about a statute's intended scope," after consulting "every thing [sic] from which aid can be derived." The rule is therefore an interpretative method of "last resort" and "need not be applied when the intent of [the legislative body] is already clear based on an analysis of the plain meaning of the statute."

*United States v. Brown*, 740 F.3d 145, 151 (3d Cir. 2012) (citations omitted).[12] Thus, "[t]he rule comes into operation at the end of the process of construing what [the legislative body] has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Gozlon-Peretz v. United States*, 498 U.S. 395, 410 (1991) (citation omitted).

> As outlined above, Section 125-3 of the Ordinance states:
>
> ***This chapter shall not apply*** to open fires, barbecues or other domestic open combustion areas used solely for the cooking of consumable foods, nor ***to any training activities of the Lewisburg Fire Companies or Buffalo Valley Regional Police Department, or to other organizations dedicated to the public good, where open fires or incineration shall be an integral part of their training or effective purposes.***

(Emphasis added.)

---

[12] "Although decisions of the Court of Appeals for the Third Circuit are not binding on Pennsylvania courts, they have persuasive value. *Garber v. Pennsylvania Department of Corrections*, 851 A.2d 222[, 226 n.9] (Pa. Cmwlth. 2004)." *Kutnyak v. Department of Corrections*, 923 A.2d 1248, 1250 (Pa. Cmwlth. 2007).

Contrary to Stilp's assertions, the exemption in Section 125-3 of the Ordinance does not provide a "speaker preference" with respect to his core political speech. As the United States Supreme Court has observed:

> Under th[e First Amendment], a government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.
>
> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

*Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015) (citations omitted).

In contrast, as outlined above, the exemption in Section 125-3 that is at issue herein only applies to "the training activities of the Lewisburg Fire Companies or Buffalo Valley Regional Police Department, or other organizations dedicated to the public good, where open fires or incineration shall be an integral part of their training or effective purposes." Because the exemption only applies to "incineration" that is "an integral part" of these public service organizations' "training activities," on its face, such an incineration in such a circumstance is not, in fact, core political speech, but merely a training activity in which these

15

organizations routinely engage. *See* Section 1903(b) of the Statutory Construction Act, 1 Pa. C.S. §1903(b) ("General words shall be construed to take their meanings and be restricted by preceding particular words.").

More to the point, unlike Stilp's political demonstration, an incineration performed pursuant to the above exemption is pure conduct relating to the training of these enumerated public safety organizations, and other like organizations, and not protected speech, in the first instance. *See, e.g.*, *Commonwealth v. Mayfield*, 832 A.2d 418, 424 (Pa. 2003) ("On its face, the statute proscribes pure conduct. However, expressive conduct can constitute protected expression where '[a]n intent to convey a particularized message [is] present, and in the surrounding circumstances the likelihood [is] great that the message would be understood by those who view[] it.'") (citation omitted); *Bricker*, 666 A.2d at 260-61 ("[T]he protections of the First Amendment 'do[] not end at the spoken and written word.' However, conduct cannot be labeled speech 'whenever the person engaging in the conduct intends to express an idea.' Rather, only that conduct 'sufficiently imbued with the elements of communication' falls within the scope of the First Amendment.") (citations omitted).

Contrary to Stilp's assertions, Section 125 of the Township's Ordinance is sufficiently definite so that ordinary people can understand what conduct is prohibited by its plain terms, and it is not so vague that a person of common intelligence must necessarily guess at its meaning and differ as to its application. Rather, the Ordinance provides reasonable standards by which a member of the public may gauge his, her, or their conduct, and does not prefer any message or any speaker. Whatever latent ambiguity may lurk in the terms "other organizations dedicated to the public good," as outlined above, Stilp's expressive conduct in this

16

matter clearly does not fall within the ambit of an "incineration" that relates to the "training activities" of the enumerated organizations. Moreover, because the exemption in Section 125-3 of the Township's Ordinance is not based on such expressive conduct, but based merely on the core training activities of such public safety organizations, Stilp's allegations of error in this regard are without merit.

Accordingly, the judgment of sentence is affirmed.


_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 155 C.D. 2022 |
| | : | |
| Eugene P. Stilp, | : | |
| | : | |
| Appellant | : | |

# **O R D E R**

AND NOW, this 5th day of October, 2023, the judgment of sentence entered in the Court of Common Pleas of the 17th Judicial District, Union County Branch, dated January 21, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
                                :
            v.                  :
                                :    No. 155 C.D. 2022
Eugene P. Stilp,                :
                   Appellant    :    Argued: December 12, 2022

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

CONCURRING OPINION
BY JUDGE McCULLOUGH                        FILED: October 5, 2023

Although I agree with the Majority's ultimate conclusion that Appellant Eugene P. Stilp's (Stilp) judgment of sentence must be affirmed, I cannot agree with the broad and hypothetical path the Majority takes to affirmance. Rather, because the Majority conducts extensive constitutional analysis that the disposition of this appeal does not require and that the record and findings below do not support, and engages in fact finding, I concur in the Majority's result but respectfully disagree with the entirety of its reasoning and legal holdings.

The Majority acknowledges that the Court of Common Pleas of the 17th Judicial District, Union County branch (trial court), after a *de novo* bench trial, found Stilp guilty of violating Section 125-2(A) of Lewisburg Borough's (Borough) Open Burning Ordinance (Ordinance)[1] based on Stilp's burning of newspaper during a protest demonstration outside the Union County Courthouse. *See Commonwealth v. Stilp* (Pa. Cmwlth., No. 155 C.D. 2022, filed October 5, 2023) (MO), slip op. at 2-4.

---

[1] Section 125-2(A) of the Ordinance provides that "[i]t shall be unlawful for any person to cause, suffer, or allow the open-fire burning of any refuse, rubbish, or garbage, from which the products of combustion are discharged into the open air." (Reproduced Record (R.R.) at 003a.)

Specifically, and notwithstanding the fact that Stilp also burned a political flag as part of his demonstration, the trial court found as follows:

> The [c]ourt finds the Commonwealth has met its burden to prove beyond a reasonable doubt [that] [Stilp] has violated Section 125-2 of the [Ordinance]. Officer [Daniel] Baumwoll testified[,] and the [c]ourt finds[,] that[] in addition to burning a flag, [Stilp] burned newspaper in an open fire in the Borough.[2] Officer Baumwoll testified[,] and the [c]ourt finds[,] that products of combustion were discharged into the open air. Paper is clearly in the definition of "Rubbish" contained in the Ordinance. No argument was offered raising any First Amendment[, U.S. Const. amend. I,] concerns with [Stilp's] action in burning the newspaper.
>
> . . . .
>
> Regardless of [Stilp's] status as an "organization dedicated to the public good," there is no evidence that the burning of newspaper was an integral part of such organization's training or effective purpose.[3] The [c]ourt finds [Stilp] guilty of a violation of the [Ordinance,] specifically [S]ection 125-2. The [c]ourt[,] having found [Stilp] **guilty of violating Section 125-2 for his burning of paper, declines to make any finding regarding [Stilp's] burning of the flag.**

(R.R. at 100a-01a) (emphasis added). In its accompanying verdict, the trial court found Stilp guilty "of a violation of the [Ordinance] for the burning of paper on March 12, 2020." (R.R. at 097a.) The *trial court clearly based its verdict exclusively*

---

[2] The citation issued by Officer Baumwoll noted generally that "[Stilp] did open burn a combustible material in a metal can on a public sidewalk. Products of combustion were released into open air." (R.R. at 002a.)

[3] The Ordinance contains several exceptions to its open-burning prohibition. Relevant here, Section 125-3 of the Ordinance provides that the prohibition does not apply to "any training activities of the Lewisburg Fire Companies or Buffalo Valley Regional Police Department, or to other organizations dedicated to the public good, where open fires or incineration shall be an integral part of their training or effective purposes." (Ordinance, § 125-3; R.R. at 003a.)

*on its finding that Stilp burned newspaper and made no findings regarding Stilp's burning of a flag*. Because **Stilp presented no evidence or argument that his burning of newspaper either implicated his First Amendment rights to free expression or was an "integral part" of the "effective purpose"** of his demonstration, he was found guilty.

Although the Majority acknowledges the trial court's limited findings and verdict,[4] it nevertheless goes on to address, and reject, Stilp's facial and as-applied First Amendment challenges to the Ordinance. It does so, it appears, on the unsupported factual basis that Stilp was "convicted . . . for violating Section 125-2(A) of the [ ] Ordinance by burning newspaper and the Trump flag midday on the courthouse steps, and not for engaging in any protected speech." (MO, slip op. at 7). It is at this point that I believe the Majority goes beyond the record and findings before us, and outside our scope of review, to conduct analysis that is, at base, hypothetical. **The Majority has essentially engaged in its own fact finding.** Specifically, Stilp was **not convicted for burning a flag**, which conviction would be the exclusive basis upon which he could challenge the Ordinance on First Amendment grounds. Given the gravity of the constitutional issues involved here and the absence of any ability on this record to address them, judicial restraint is in order.

Accordingly, I would affirm the trial court on the much narrower ground that Stilp's burning of newspaper neither implicates First Amendment protections nor qualifies factually under the Section 125-3 exception. Because the Majority has engaged in fact finding, performed legal analysis, and rendered

_____

[4] Although the Majority acknowledges the unresolved factual question of whether a flag could be considered "refuse" or "rubbish" under Section 125-2(A) of the Ordinance, it nevertheless deems the issue immaterial to our analysis because Stilp was convicted *only* of burning newspaper. (MO, slip op. at 9 n.8.)

constitutional holdings that are not implicated here and that well exceed the scope of our review and the factual basis for affirmance, I respectfully cannot agree with those excesses.   Thus, I concur in the result only.


_____
PATRICIA A. McCULLOUGH, Judge